1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RYAN DAVID ANDERSON,                    No.  2:20-cv-00246 KJM DB P

12                    Plaintiff,

13         v.                                 ORDER

14    VAN GERWEN, et al.,

15                    Defendants.

16

17         Plaintiff, an inmate proceeding pro se and in forma pauperis, seeks relief pursuant to 42

18   U.S.C. § 1983.  Plaintiff claims defendants violated his First, Eighth, and Fourteenth Amendment

19   rights as well as plaintiff's rights under the Americans with Disabilities Act ("ADA").  Before the

20   court is plaintiff's third amended complaint ("TAC") for screening.  (ECF No. 21.)  For the

21   reasons set forth below, plaintiff will be given the option of proceeding on his cognizable claims

22   or filing an amended complaint.

23                                    **SCREENING**

24   **I.       Legal Standards**

25         The court is required to screen complaints brought by prisoners seeking relief against a

26   governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C. §

27   1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims

28   that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Franklin, 745 F.2d at 1227.  Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §

2

1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

## II.      Linkage Requirement

Under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each defendant personally participated in the deprivation of his rights.  See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior.  Iqbal, 556 U.S. at 676 (stating vicarious liability is inapplicable in Section 1983 suits).  Since a government official cannot be held liable under a theory of vicarious liability in Section 1983 actions, plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions by linking each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights. Id. at 676.

## III.     Allegations in the Complaint

In the TAC, plaintiff states that, at all relevant times, he was an inmate at the Shasta County Jail in Redding, California.  (ECF No. 21 at 1.)  Plaintiff names as defendants the County of Shasta, the Shasta County Sheriff's Office ("SCSO"), Former Shasta County Sheriff Tom

Bosenko, SCSO Captain David M. Kent, and ADA Coordinator SheyeAnne N. Bailey.  (Id. at 1-2.)  Plaintiff also names as defendants SCSO correctional deputies Robert M. Van Gerwen, Andrew D. Page, Zachary S. Jurkiewicz, William J. Decker, Brandon L. Brown, Wyatt L. Mason, Joshua P. Dorstad, Kirk E. Schritter, Devin K. Hurte, and Joshua R. Millis.  (Id. at 2.)

The claims raised in the TAC relate to three events that occurred on February 1, 2019; February 22, 2019; and March 7, 2019.  Plaintiff's allegations related to these incidents are separated below.

**A. February 1, 2019 Incident**

On February 1, 2019, plaintiff was removed from his cell for a cell search.  (Id. at 7.)  Plaintiff was removed without his hand and foot casts that he otherwise wore due to a broken hand and foot.  (Id.)  While plaintiff was handcuffed, defendant Van Gerwen "wrenched" on plaintiff's broken hand using a wrist lock and said "[h]old still, so I can break your hand."  (Id.)  Defendant Van Gerwen later "tossed [plaintiff's] food cast/boot towards [him]" where it slid and hit his broken foot.  (Id. at 8.)

Following the cell search, plaintiff discovered that his hand cast and extra blanket were missing.  (Id. at 7.)  The incident report prepared by defendant Mason stated that he had removed the blanket and "excessive gauze" from plaintiff's cell.  (Id. at 9.)  Plaintiff believes the gauze was actually his hand cast.  (Id.)  Defendant Van Gerwen also "announced to the pod, 'I will shred any grievance submitted.'"  (Id. at 8.)

Plaintiff subsequently had difficulty submitting ADA grievance forms regarding the incident.  (Id. at 12.)  In addition to tablets with grievance forms being removed, defendants Mason and Brown refused to provide plaintiff with grievance forms.  (Id.)  Defendant Bailey met with plaintiff in her role as ADA Coordinator on February 8, 2019.  (Id.)  "[Defendant] Bailey would only address the hand/half-arm cast…[and] would not allow [plaintiff] to talk about the jails' failure to follow its ADA policy."  (Id.)

**B. February 22, 2019 Incident**

On February 22, 2019, defendant Page led plaintiff into an elevator.  (Id. at 13.)  Plaintiff was handcuffed at the time and requested defendant Page "be careful of [his] broken hand."  (Id.)

4

After entering the elevator, defendant Page yelled "Quit resisting! Quit resisting!" though plaintiff was not resisting.  (Id.)  In response, defendants Van Gerwen, Dorstad, Schritter, Hurte, Jurkiewicz, and Mason rushed onto the elevator.  (Id.)  "[Defendant] Page used an extremely painful maneuver, lifting [plaintiff] on [his] tiptoes and shoving [him] hard into the corner of the elevator under the camera…" while the other defendants crushed plaintiff.  (Id.)  Plaintiff was in pain due to the fact that he was not wearing his hand cast as well as his face being "smashed into the wall" and his body being under the weight of the defendants.  (Id.)  Defendant Page then threatened plaintiff, telling him "you better not submit another fucking grievance or ADA form." (Id.)

Following this incident, defendant Page returned plaintiff to his cell and, once there, removed the handcuffs from plaintiff.  (Id.)  Defendant Page then "used his full weight and violently pushed himself up and off of me, with all of that force intentionally crushing my broken hand."  (Id.)

Defendant Decker generated an incident report in connection with this incident.  (Id. at 15.)  This report "contained fabricated statements that were repeatedly used against me…to the point of [plaintiff] being legally charged for crimes misrepresented by [defendant Decker's] words."  (Id.)  This included that plaintiff used the metal support in his cast to hit another inmate and that plaintiff kicked the inmate with his foot cast/boot.  (Id. at 15-16.)  Plaintiff eventually plead guilty to reduced charges for his involvement in the fight.  (Id.)

On March 11, 2019, defendant Jurkiewicz also "tried to get the doctor to enter 'fighting with his casts on' into his medical record."  (Id. at 16.)  Plaintiff also mentions that he believes his mail from this court has been opened but does not specify any defendants in connection with this claim.  (Id. at 17.)

**C.  March 7, 2019 Incident**

Plaintiff was placed in administrative segregation on March 7, 2019 as a result of an inmate fight plaintiff was involved in.  (Id. at 18.)  The walls of plaintiff's administrative segregation cell were "covered" in urine and feces.  (Id.)  Defendant Millis refused to give plaintiff anything to clean the cell with.  (Id.)  Despite plaintiff's best efforts to clean the cell he

5

"developed gastrointestinal issues…[and] the stench of feces remained throughout [his] stay." (Id.)  Plaintiff also subsequently developed abscesses that required visits to the hospital for treatment.  (Id. at 19.)

Defendant also includes information regarding plaintiff not receiving sanitary products ordered by his mother.  (Id.)  However, plaintiff does not appear to include any specific claims or defendants in connection with these factual allegations.  (See id.)

## IV.   Does Plaintiff State a Claim under § 1983?

### A.  Severing Unrelated Claims

The TAC includes claims related to three separate incidents.  Federal Rule of Civil Procedure 20(a)(2), which permits a plaintiff to sue multiple defendants in the same action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and there is a "question of law or fact common to all defendants." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits ..." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)).

Both the February 1 and February 22 incidents both involve defendant Van Gerwen.  They are also allegedly interconnected as plaintiff claims that the second incident was in response to the investigation of the first incident.  Plaintiff also includes a number of claims related to these incidents but, as these clearly arise from the same transaction or occurrence and involve common questions of law and fact, they may be joined. Fed. R. Civ. P. 20(a)(2).  However, the TAC also contains several claims stemming from an inmate fight that is otherwise unrelated to the February 1 and February 22 events.  These includes (1) an Eighth Amendment conditions of confinement claim based on the conditions of the cell he was kept in following the fight (see ECF No. 21 at 18-19); (2) a First Amendment claim against defendant Decker for a report about the fight containing fabrications (see id. at 26); and (3) a Fourteenth Amendment claim against defendants Decker and Jurkiewicz regarding due process failures during the investigation and eventual report created from that inmate fight  (see id. at 16).

Plaintiff provides a vague connection between these events and the February 1, 2019 event by claiming that all of these acts were retaliation on behalf of defendant Van Gerwen.  (See e.g., id. at 16.)  Despite this, these events themselves appear to have arisen from an entirely different transaction or occurrence, in response to the inmate fight.  Additionally, these claims involve different factual questions and the conditions of confinement and due process claims raise different questions of law than plaintiff's other claims.  As such, these claims may not be joined to this action under Fed. R. Civ. P. 20(a)(2).  Though plaintiff may be able to state claims in connection with this event, they must be severed from the present action.  Plaintiff may seek to bring these claims in a separate action.

### B. Supervisor Liability and Policy Claims

Along with the other claims discussed below, the TAC contains claims against defendants Shasta County, SCSO, SCSO Sheriff Tom Bosenko, and SCSO Captain David Kent as well as for failure to adequately train correction officers as well as claims against defendants Bosenko and Kent based on their role as supervisors.  (ECF No. 21 at 5-6.)  Plaintiff also attaches these claims to the end of each of his other claims throughout the TAC.  (See e.g., id. at 19.)  The TAC broadly asserts that inmates at Shasta County Jail have died at a high rate yet the above defendants have continually failed to properly train prison personnel.  (Id. at 5-6.)  Plaintiff claims that these defendants sanctioned, tolerated, and ratified the actions of their subordinates and that those subordinates had permission and consent from defendants Shasta County, SCSO, Bosenko, and Kent to act with deliberate indifference.  (Id. at 6.)

As noted above, prison officials may not be held liable under a theory of respondeat superior.  Iqbal, 556 U.S. at 676.  When a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil ghts violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  To allege a defendant instituted a prison policy that harmed him, plaintiff must: (1) identify that policy with specificity, (2) show that the defendant was directly responsible

7

for it, (3) show that the defendant knew the policy could cause plaintiff harm, and (4) show how the policy caused him harm. See Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011). To allege a defendant failed to train, plaintiff must show: (1) that the defendant was responsible for that training, (2) just what the defendant did or did not do, (3) that the defendant knew his actions could cause plaintiff harm, and (4) that the actions did cause plaintiff harm. See Edgerly v. City & Cnty. of S.F., 599 F.3d 946, 962 (9th Cir. 2010) (dismissing supervisory liability claim when no facts "suggest [Sheriff] provided any training to Officers...., or that he was responsible for providing formal training to any officers.").

As stated, plaintiff's allegations are too vague to support a claim for based on policy or failure to train. See Ivey, 673 F.2d at 268. Plaintiff's factual allegations regarding any policies or lack of training are limited to a conclusory statement that the above-mentioned defendants were in charge of policy and failed to train the other defendants. (See ECF No. 21 at 5-6.) Plaintiff has not identified particular policies that harmed the plaintiff nor identified specific actions or inactions by these defendants. Starr, 652 F.3d at 1207-08; Edgerly, 599 F.3d at 962. Further, the TAC does not contain any allegations that establish defendants were aware that this could cause plaintiff harm. Id. This is a requirement for both claims. Starr, 652 F.3d at 1207-08; Edgerly, 599 F.3d at 962. Thus, the TAC fails to allege sufficient facts to establish a claim that prison policy harmed him or that defendants failed to adequately train prison officials. Id.

Given the above, plaintiff will not be permitted to proceed on his failure to train and policy claims against defendants Shasta County, SCSO, Bosenko, and Kent.[1]

### C. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986);

---

[1] Though these claims have already been found to not be cognizable, it is also noted that plaintiff has also not alleged sufficient facts to establish liability for Shasta County. Plaintiff fails to establish that he was injured as a result of the government's official policy or custom. Thus, plaintiff's claims against Shasta County are insufficient under Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978).

1    Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

2    Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy

3    and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited

4    by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

5                        **1.   Deliberate Indifference to Medical Needs**

6                        **i.   Legal Standard for Deliberate Indifference to Medical Needs**

7            If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner

8    must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference

9    to serious medical needs." Estelle, 429 U.S. at 106.  An Eighth Amendment medical claim has

10   two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's

11   response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on

12   other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

13           A medical need is serious "if the failure to treat the prisoner's condition could result in

14   further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974

15   F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include

16   "the presence of a medical condition that significantly affects an individual's daily activities." Id.

17   at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

18   objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S.

19   825, 834 (1994).

20           If a prisoner establishes the existence of a serious medical need, he must show that prison

21   officials responded to the serious medical need with deliberate indifference.  See Id. at 834.  In

22   general, deliberate indifference may be shown when prison officials deny, delay, or intentionally

23   interfere with medical treatment, or may be shown by the way in which prison officials provide

24   medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

25           Before it can be said that a prisoner's civil rights have been abridged with regard to

26   medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,'

27   'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter

28   Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also

                                                    9

Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.  See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### ii.  Analysis of Medical Needs Claims

Plaintiff claims that defendants Van Gerwen, Mason, Millis, and Brown were deliberately indifferent to plaintiff's serious medical needs when he was removed from his cell without his hand or food casts on January 1, 2019.  (ECF No. 21 at 9.)  All of these defendants allegedly were aware that plaintiff had a broken hand and foot which required casts.  (Id.)  Plaintiff alleges that defendant Van Gerwen removed plaintiff from his cell without these casts and used a wrist lock on plaintiff's broken hand.  (Id.)  Plaintiff also alleges that defendant Mason knowingly removed plaintiff's wrist cast and mischaracterized it as "excessive gauze".  (Id.)

////

Under the facts alleged, plaintiff may have had a serious medical need, defendants Van Gerwen and Mason were aware of that need, and both defendants were potentially deliberately indifferent to that need.  As such, The TAC contains sufficient factual allegations against defendants Van Gerwen and Mason to establish a cognizable medical needs claim.  See McGuckin, 974 F.2d at 1059.  However, though plaintiff lists defendants Millis and Brown in this section of his complaint, he does not include any factual allegations about their involvement in this incident.  (See ECF No. 21 at 9-10.)  As such, plaintiff has not satisfied the linkage requirement or shown that defendants Millis and Brown acted with deliberate indifference.  Ortez, 88 F.3d at 809; Taylor, 880 F.2d at 1045; Farmer, 511 U.S. at 834.

Accordingly, plaintiff will be permitted to proceed on his cognizable Eighth Amendment deliberate indifference to medical needs claims against defendants Van Gerwen and Mason.  Plaintiff will be given the option to proceed on his cognizable claims or be given leave to file an amended complaint to state additional claims against these or other defendants.

### 2. Excessive Force

#### i. Legal Standards for Excessive Force

For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 7).  The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8, and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-38 (citing Hudson, 503 U.S. at 9-10).

#### ii. Analysis of Excessive Force Claims

Plaintiff claims that defendant Van Gerwen used excessive force against him during the February 1, 2019 incident.  He alleges that defendant Van Gerwen intentionally utilized a wrist lock on plaintiff's broken hand while he was handcuffed and threw plaintiff's boot at him with the intention of hitting his broken foot and causing him pain.  (ECF No. 21 at 9-10.)  He also

1    claims that defendants Page, Van Gerwen, Dorstad, Schritter, Hurte, Jurkievicz, and Mason used

2    excessive force on February 22, 2019.  During that event, defendants Page, Van Gerwen, Dorstad,

3    Schritter, Hurte, Jurkievicz, and Mason allegedly rushed into an elevator and injured plaintiff

4    when "[his] body was smashed by the intentionally crushing weight of Page, Ven Gerwen,

5    Dorstad, Schritter, Hurte, Jurkiewicz, and Mason."  (Id. at 13.)

6          Plaintiff has alleged minimally sufficient facts as to both incidents to state excessive force

7    claims under the Eighth Amendment.   During both incidents, plaintiff was allegedly handcuffed

8    and not resisting but defendants used force against plaintiff despite not having a legitimate

9    purpose in doing so.  (See id. at 9-1, 13.)  Defendants purportedly did so with the intent to cause

10   plaintiff pain and discomfort.  (See id.)  Under these facts, plaintiff has alleged sufficient facts to

11   state cognizable Eighth Amendment excessive force claims against defendants Page, Van

12   Gerwen, Dorstad, Schritter, Hurte, Jurkievicz, and Mason.  Wilkins, 559 U.S. at 37.  Plaintiff will

13   be permitted to proceed on these claims or be given leave to file an amended complaint.

14          **D.  First Amendment**

15          The section of plaintiff's complaint related to his First Amendment claim is lengthy.

16   (ECF No. 21 at 20-25.)  It is also not clear how all of the information discussed in this section

17   related to plaintiff's claims.  (See id.)  The court will seek to address all First Amendment claims

18   that are apparent from this section.  If plaintiff wishes to bring additional First Amendment claims

19   not identified here he may do so in an amended complaint.

20          "Within the prison context, a viable claim of First Amendment retaliation entails five

21   basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

22   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

23   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

24   correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and

25   citations omitted).

26          Plaintiff has alleged sufficient facts to state retaliation claims against defendants Page,

27   Van Gerwen, Dorstad, Schritter, Hurte, Jurkiewicz, and Mason.  Plaintiff alleges that the

28   purported excessive force used on February 22, 2019 by these defendants was retaliation for

1   plaintiff filing inmate grievances in connection with the initial February 1, 2019 incident.  (ECF

2   No. 21 at 23.)  It is well-established that inmates have a right to file grievances against

3   correctional officers.  See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing

4   Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  Plaintiff alleges that officers were not

5   using force for a legitimate correctional goal.  (ECF No. 21 at 23.)  Plaintiff also claims that, as a

6   result of this incident, plaintiff avoided pursuing administrative and legal recourse for some time.

7   (Id. at 21.)  Thus, the alleged actions of defendants Page, Van Gerwen, Dorstad, Schritter, Hurte,

8   Jurkiewicz, and Mason were adverse actions taken in response to protected conducted, chilled the

9   plaintiff's First Amendment rights, and did not advance a legitimate correctional goal.  Rhodes,

10  408 F.3d at 567-68.

11          The TAC fails to state cognizable First Amendment claims against defendants Brown and

12  Millis.  Plaintiff claims that defendants Millis and Brown did not accept inmate grievance forms

13  that plaintiff wished to submit against defendant Van Gerwen.  (ECF No. 21 at 22.)  From the

14  limited information included as to this claim, there is not sufficient factual support to establish

15  that defendant Millis and Brown's actions adversely affected plaintiff or that their actions were in

16  response to any protected action by plaintiff.  As such, these claims are not cognizable as

17  currently stated.  Rhodes, 408 F.3d at 567-68.  Further, claims regarding a failure to process

18  prisoner grievances are not actionable.  See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)

19  (failure to process prisoner's grievances not actionable under § 1983).  Given the above, plaintiff

20  has failed to allege sufficient facts to state a cognizable First Amendment claim against

21  defendants Millis and Brown.

22          Plaintiff will be given the option to proceed on his cognizable First Amendment claims

23  against defendants Page, Van Gerwen, Dorstad, Schritter, Hurte, Jurkiewicz, and Mason or be

24  given leave to file an amended complaint.[2]

25  ////

26

27  _____

    [2] As discussed earlier, plaintiff also sought to bring a First Amendment claim against defendant

28  Decker based on a report filed by defendant Decker.  As that claim was already determined to not
    be presently cognizable, does not need to be addressed here.

                                                13

1       **E.  ADA**

2               Plaintiff indicates that he wishes to bring a claim for violation of the ADA.  (ECF No. 21

3       at 11.)  Though it is not clearly stated in the TAC, plaintiff's claims appear to be focused on the

4       alleged failure of defendant Bailey to discuss "ADA issues" and the prison's policies with

5       defendant.  (Id. at 12.)

6               Title II of the ADA provides that "no qualified individual with a disability shall, by reason

7       of such disability, be excluded from participation in or be denied the benefits of the services,

8       programs, or activities of a public entity, or be subjected to discrimination by any such entity."

9       42 U.S.C. § 12132.  In order to state a claim that a public program or service violated Title II of

10      the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability;" (2) he was

11      either excluded from participation in or denied the benefits of a public entity's services,

12      programs, or activities, or was otherwise discriminated against by the public entity; and (3) such

13      exclusion, denial of benefits, or discrimination was by reason of his disability.  McGary v. City of

14      Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); see also Lee v. City of Los Angeles, 250 F.3d 668,

15      691 (9th Cir. 2001) ("If a public entity denies an otherwise 'qualified individual' 'meaningful

16      access' to its 'services, programs, or activities' 'solely by reason of' his or her disability, that

17      individual may have an ADA claim against the public entity.").

18              Plaintiff has not alleged sufficient facts to state a claim for violation of Title II of the

19      ADA.  The factual allegations in the TAC do not show that plaintiff is a "qualified individual

20      with a disability" under the ADA.  (ECF No. 21 at 11-12.)  Plaintiff's claim of disability appears

21      to rest on a broken hand and foot.  (See id. at 12.)  However, plaintiff has not alleged any

22      additional facts or included any legal basis to support that these impairments are a disability.

23      Disability is defined as "a physical or mental impairment that substantially limits one or more

24      major life activities." 42 U.S.C. § 12102(1)(A).  While extensive analysis is not necessary to

25      answer whether an impairment is a disability, plaintiff must still allege at least some facts that are

26      sufficient to establish that he has a disability under the ADA.  Shields v. Credit One Bank, N.A.,

27      32 F.4th 1218, 1226 (9th Cir. 2022).  As he has not done so, the TAC fails to contain sufficient

28      factual allegations to cognizable state a claim under Title 2 of the ADA.

                                                    14

1                                     **AMENDING THE COMPLAINT**

2          This court finds above that plaintiff has alleged sufficient facts to state cognizable Eighth

3   Amendment excessive force claims and First Amendment retaliation claims against defendants

4   Page, Van Gerwen, Dorstad, Schritter, Hurte, Jurkievicz, and Mason.  Additionally, plaintiff has

5   alleged sufficient facts to state a cognizable Eighth Amendment medical needs claim against

6   defendants Van Gerwen and Mason.  However, the court also finds that the third amended

7   complaint fails to state any other claims.  Plaintiff will be given the option to either proceed on

8   the cognizable claim in the TAC or be given leave to file an amended complaint.

9          If plaintiff chooses to file an amended complaint, he must address the problems with his

10  complaint that are explained above.  Any amended complaint must be complete in itself.  The

11  court cannot refer to a prior complaint to understand the plaintiff's claims.

12         In an amended complaint plaintiff must clearly identify each defendant and the action that

13  defendant took that violated plaintiff's constitutional rights.  The court is not required to review

14  exhibits to determine what plaintiff's charging allegations are as to each named defendant.  If

15  plaintiff wishes to add a claim, he must include it in the body of the complaint.  The charging

16  allegations must be set forth in the amended complaint, so defendants have fair notice of the

17  claims plaintiff is presenting.  That said, plaintiff need not provide every detailed fact in support

18  of his claims.  Rather, plaintiff should provide a short, plain statement of each claim.  See Fed. R.

19  Civ. P. 8(a).

20         Any amended complaint must show the federal court has jurisdiction, the action is brought

21  in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must

22  contain a request for particular relief.  Plaintiff must identify as a defendant only persons who

23  personally participated in a substantial way in depriving plaintiff of a federal constitutional right.

24  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (stating that a person subjects another to the

25  deprivation of a constitutional right if he does an act, participates in another's act, or omits to

26  perform an act he is legally required to do that causes the alleged deprivation).  "Vague and

27  conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v.

28  Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

In an amended complaint, the allegations must be set forth in numbered paragraphs.  Fed. R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a single defendant.  Fed. R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity.  See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading).  Plaintiff's claims must be set forth in short and plain terms.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself, without reference to any prior pleading. E.D. Cal. R. 220.  Once plaintiff files an amended complaint, the original pleading is superseded. By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule, the court may impose sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

////

////

////

////

////

////

////

////

////

////

////

////

**CONCLUSION**

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Plaintiff's third amended complaint (ECF No. 21) states a cognizable claim against defendants Page, Van Gerwen, Dorstad, Schritter, Hurte, Jurkievicz, and Mason for use of excessive force and retaliation in violation of plaintiff's Eighth and First Amendment rights.  It also states a cognizable claim against defendants Van Gerwen and Mason for deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment rights.

2. The third amended complaint (ECF No. 21) fails to state any other cognizable claims.

3. Plaintiff may choose to proceed on his cognizable claims set out above or he may choose to amend his complaint.

4. Within thirty (30) days of the date of this order plaintiff shall notify the court of how he wishes to proceed.  Plaintiff may use the form included with this order for this purpose.

5. Plaintiff is warned that his failure to comply with this order will result in a recommendation that this action be dismissed.

Dated:  December 22, 2022

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:14
DB/DB Prisoner Inbox/Civil Rights/S/ande0246.scrn_tac

17

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   RYAN DAVID ANDERSON,                     No.  2:20-cv-00246 KJM DB P

11                    Plaintiff,

12          v.                                 PLAINTIFF'S NOTICE ON HOW TO
                                               PROCEED
13   VAN GERWEN, et al.,

14                    Defendants.

15

16   Check one:

17

_____     Plaintiff wants to proceed immediately on his Eighth Amendment excessive force and

18        First Amendment retaliation claims against defendants Andrew D. Page, Robert Van

19        Gerwen, Joshua P. Dorstad, Kirk E. Schritter, Devin K. Hurte, Zachary S. Jurkievicz, and

20        Wyatt L. Mason as well as his Eighth Amendment medical needs claim against

21        defendants Van Gerwen and Mason.  Plaintiff understands that by going forward without

22        amending the complaint he is voluntarily dismissing all other claims and defendants.

23

24   _____     Plaintiff wants to amend the complaint.

25

26   DATED:_____          _____

27                                           Robert W. Van Gerwen
                                             Plaintiff pro se
28

                                   18