1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RYAN DAVID ANDERSON,                        No.  2:20-cv-0246 KJM DB P

12                    Plaintiff,

13         v.                                      ORDER AND FINDINGS AND
                                                   RECOMMENDATIONS
14    VANGERWEN, et al.,

15                    Defendants.

16

17         Plaintiff, an inmate proceeding pro se and in forma pauperis, seeks relief pursuant to 42

18    U.S.C. § 1983 and Cal. Civ. Code § 52.1.  Plaintiff claims defendants violated his rights under the

19    First Amendment and Eighth Amendment.  Before the court is plaintiff's fourth amended

20    complaint for screening.  (ECF No. 27.)  For the reasons set forth below, plaintiff has stated

21    cognizable claims of excessive force, retaliation, and deliberate indifference to his medical needs.

22    The undersigned will recommend that plaintiff's remaining claims and certain defendants be

23    dismissed without leave to amend.

24                                          **SCREENING**

25    **I.      Legal Standards**

26         The court is required to screen complaints brought by prisoners seeking relief against a

27    governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C. §

28    1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims

1    that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

2    granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28

3    U.S.C. § 1915A(b)(1) & (2).

4          A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

5    Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227–28 (9th

6    Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

7    indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

8    490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

9    pleaded, has an arguable legal and factual basis.  See Franklin, 745 F.2d at 1227.  Rule 8(a)(2) of

10   the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim

11   showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

12   the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S.

13   544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

14         However, to survive dismissal for failure to state a claim a complaint must contain more

15   than "a formulaic recitation of the elements of a cause of action"; it must contain factual

16   allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550

17   U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the

18   allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738,

19   740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all

20   doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

21         The Civil Rights Act under which this action was filed provides as follows:

22              Every person who, under color of [state law] . . . subjects, or causes
                to be subjected, any citizen of the United States . . . to the deprivation
23              of any rights, privileges, or immunities secured by the Constitution .
                . . shall be liable to the party injured in an action at law, suit in equity,
24              or other proper proceeding for redress.

25   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

26   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

27   Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A

28   person 'subjects' another to the deprivation of a constitutional right, within the meaning of §

2

1  1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform

2  an act which he is legally required to do that causes the deprivation of which complaint is made."

3  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

4          Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

5  their employees under a theory of respondeat superior and, therefore, when a named defendant

6  holds a supervisorial position, the causal link between him and the claimed constitutional

7  violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

8  Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations

9  concerning the involvement of official personnel in civil rights violations are not sufficient.  See

10  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

11      **II.      Linkage Requirement**

12          Under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate

13  that each defendant personally participated in the deprivation of his rights.  See Jones v.

14  Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There must be an actual connection or link between

15  the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

16  Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996); see also Taylor

17  v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

18          Government officials may not be held liable for the actions of their subordinates under a

19  theory of respondeat superior.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (stating vicarious

20  liability is inapplicable in Section 1983 suits).  Since a government official cannot be held liable

21  under a theory of vicarious liability in Section 1983 actions, plaintiff must plead sufficient facts

22  showing that the official has violated the Constitution through his own individual actions by

23  linking each named defendant with some affirmative act or omission that demonstrates a violation

24  of plaintiff's federal rights.  Id.

25      **III.     Allegations in the Complaint**

26          In the fourth amended complaint, plaintiff states that, at all relevant times, he was an

27  inmate at the Shasta County Jail in Redding, California.  (ECF No. 27 at 1.)  Plaintiff names as

28  defendants the County of Shasta, Shasta County Sheriff's Office ("SCSO"), Former Shasta

County Sheriff Tom Bosenko, Former Shasta County Sheriff Eric Magrini, SCSO Captain David M. Kent, and Captain Gene B. Randall, Jr.  (Id. at 1–2.)  Plaintiff also names as defendants SCSO corrections staff Robert M. Van Gerwen, Andrew D. Page, Zachary S. Jurkiewicz, Brandon L. Brown, Wyatt L. Mason, Joshua P. Dorstad, Kirk E. Schritter, Devin K. Hurte, Joshua R. Millis, John Doe 1, and John Doe 2.  (Id. at 2.)

The claims raised in the fourth amended complaint relate to two events that occurred on February 1, 2019 and February 22, 2019.  Plaintiff's allegations related to these incidents are separated below.

**A.  February 1, 2019 Incident**

On February 1, 2019, defendant Van Gerwen conducted a search of plaintiff's cell.  (Id. at 8.)  Plaintiff had a broken hand and foot, for which he had been prescribed a splint and medical boot.  (Id. at 7.)  Van Gerwen told him to place his hands behind his back, and plaintiff informed him that his hand was broken.  (Id. at 7, 8.)  Van Gerwen allegedly replied, "Hold still, so I can break your hand."  (Id. at 8.)

While plaintiff was handcuffed, Van Gerwen "used a wristlock maneuver" on plaintiff, "causing [him] intense pain by wrenching on [his] broken hand . . .".  (Id.)  Plaintiff was then removed from his cell without his splint and medical boot.  (Id.)  After the boot was returned to him, he could not properly secure it to his leg and Van Gerwen allegedly "yanked" him from it, which caused plaintiff to take a step on his broken foot and collapse onto the floor in pain.  (Id.)  Van Gerwen then "dragged" plaintiff into the hallway as plaintiff "hopped on one leg to stay upright and avoid the pain."  (Id.)  Van Gerwen threw plaintiff's medical boot at him and hit his foot, causing plaintiff to experience "shooting pain."  (Id.)  Van Gerwen also allegedly "announced to the pod, 'I will shred any grievance submitted.'"  (Id.)

Following the cell search, plaintiff discovered that his hand splint and an extra blanket he used to elevate his broken foot had been removed from his cell, as had his written authorization to possess these items.  (Id. at 11.)  An incident report prepared by defendant Mason stated that he had removed the blanket and "excessive gauze" from plaintiff's cell.  (Id.)  Plaintiff believes the gauze was actually his splint.  (Id.)

4

Two days after the incident, plaintiff requested a new splint for his broken hand.  (Id. at 12.)  The next day, he asked defendant Millis if he could "follow up" on the request, but Millis allegedly refused.  (Id.)  In the week after the cell search, plaintiff "submitted numerous requests to the [Americans with Disabilities Act] Coordinator" regarding alleged "abuses inflicted on [him] by the jailers."  (Id. at 17.)  On February 8, plaintiff attempted to file another Americans with Disabilities Act (ADA) grievance, but defendant Brown told him, "They won't be accepted."  (Id. at 12.)  By February 8, officials had replaced plaintiff's splint.  (Id. at 17.)

Additionally, plaintiff claims to have filed a three-page grievance against Van Gerwen, along with a list of thirteen individuals who witnessed the use of force.  (Id. at 16.)  However, after he obtained a copy of the grievance through a record request, he determined that two of the pages and the list of witnesses had been omitted from the grievance.  (Id. at 17.)  Plaintiff believes Van Gerwen destroyed these pages and the list, consistent with his alleged threat on February 1 to "shred" any grievances.  (Id. at 16.)

**B.  February 22, 2019 Incident**

On February 22, 2019, defendant Page led plaintiff into an elevator, accompanied by defendants Van Gerwen, Dorstad, Schritter, Hurte, Jurkiewicz, and Mason.  (Id. at 13.)  Plaintiff was handcuffed at the time and requested defendant Page "be careful of [his] broken hand."  (Id.)  After entering the elevator, defendant Page yelled "Quit resisting! Quit resisting!" though plaintiff was not resisting.  (Id.)  In response, defendants Van Gerwen, Dorstad, Schritter, Hurte, Jurkiewicz, and Mason rushed onto the elevator and pinned plaintiff to the wall.  (Id.)  "[Defendant] Page used an extremely painful wristlock maneuver, wrenching [plaintiff's] broken hand beyond the normal range of motion, forcefully lifting [plaintiff] onto [his] tiptoes and shoving [him] hard into the corner of the elevator under the camera . . .".  (Id.)  Defendant Page then threatened plaintiff, telling him, "You better not submit another fucking grievance or ADA form, or ELSE!"  (Id.)

Page continued to use a "painful hold" on plaintiff's hand as he escorted him to his cell, despite plaintiff telling him that it was causing him pain.  (Id. at 14.)  Once in his cell, plaintiff lay prone on the floor so that Page could remove the handcuffs.  (Id.)  After removing the handcuffs,

1  Page "used his full weight and violently pushed himself up and off [plaintiff], with all of that

2  force intentionally crushing [plaintiff's] broken hand."  (Id.)

3       Plaintiff believes the use of force on February 22 was retaliation for grieving the February

4  1, 2019 incident.  (Id.)  He alleges that "corrections officers have perpetuated a pervasive practice

5  of severely beating and causing significant injuries to inmates, during what has been known as

6  'elevator rides.'"  (Id.)  According to plaintiff, corrections staff do not document these incidents,

7  but they are "detailed in multiple lawsuits against various officers."  (Id.)

8       **C.  Plaintiff's Claims**

9       Plaintiff asserts nine claims in connection to the February 1 and February 22, 2019

10  incidents:

11       • An excessive force claim against defendant Van Gerwen for his use of force on

12          February 1, 2019, and against the County, SCSO, and defendants Bosenko,

13          Magrini, Kent, and Randall in their policymaking and supervisory roles.

14       • A deliberate indifference claim against Van Gerwen for using force against

15          plaintiff with deliberate indifference to his broken hand and foot; against Mason

16          and Van Gerwen for erroneously confiscating plaintiff's splint, his extra blanket,

17          and documentation authorizing him to possess the splint and extra blanket;

18          against Millis and Brown for refusing to accept his grievances; and the County,

19          SCSO, Bosenko, Magrini, Kent, and Randall in their policymaking and

20          supervisory roles.

21       • An excessive force claim against Page, Van Gerwen, Dorstad, Schritter, Hurte,

22          Jurkiewicz, and Mason for the February 22, 2019 incident on the elevator, and

23          against the County, SCSO, Bosenko, Magrini, Kent, and Randall in their

24          policymaking and supervisory roles.

25       • A retaliation claim against Page, Van Gerwen, Dorstad, Schritter, Hurte,

26          Jurkiewicz, and Mason for the February 22 incident; against Millis and Brown

27          for refusing to accept his grievances; and against the County, SCSO, Bosenko,

28          Magrini, Kent, and Randall in their policymaking and supervisory roles.

6

- A "municipal liability" claim against the County, alleging that the February 1 and 22 incidents were committed pursuant to the County's "customs, policies, practices and/or procedures." (Id. at 19.)  According to plaintiff, the County, SCSO, Boseko, Magrini, Randall, and Kent "had sufficient training policies in place, but allowed for the corrections officers' deliberate indifference to the constitutional, medical and ADA rights of persons under their care." (Id.)  Plaintiff believes "[t]hese actions/omissions were approved, tolerated, and/or ratified by policymaking officers for the County and its Sheriff's Office . . .". (Id.)

- A "supervisory liability" claim against Bosenko, Magrini, Randall, and Kent, based on the same conduct alleged in plaintiff's "municipal liability" claim.

- A state claim brought pursuant to the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, based on the allegations of excessive force and retaliation.

- A "Monell" claim against the County, on the grounds that Boseko, Magrini, Randall, and Kent "had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff and discipline all employees and agents of the SCSO." (Id. at 27.)  According to plaintiff, "[t]hey failed to do so, with deliberate indifference" to detainees' constitutional rights. (Id.)  He further claims that "[t]here is an established history of County, SCSO and Bosenko ignoring and allowing wrongful acts within the Shasta County Jail, with deliberate indifference and a reckless disregard for the truth." (Id.)

- A First Amendment claim against defendants Doe 1 and Doe 2, for allegedly opening plaintiff's legal mail in late 2020 while he was detained at the Shasta County Jail.  Specifically, he accuses these defendants of opening mail sent to him by this court in connection this lawsuit, outside of his presence. (Id. at 28.)

////

////

7

**IV.    Does Plaintiff State a Claim under § 1983?**

    **A.  Excessive Force**

        **1.  Legal Standard**

Plaintiff states that he was confined at the Shasta County Jail pursuant to a December 2018 arrest.[1]  (Id. at 7.)  The Fourteenth Amendment's Due Process Clause applies to excessive force claims brought by pretrial detainees.  Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015).  "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'"  Id.  Unlike convicted prisoners, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  Id. at 396–97.  This assessment requires a court or factfinder to "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time . . .".  Id. at 397.  In assessing the reasonableness or unreasonableness of the force used, courts may consider:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.

        **2.  Analysis**

Plaintiff claims that, on February 1, defendant Van Gerwen used a wristlock on plaintiff's hand, knowing it was broken, and took other actions that caused him severe pain.  (ECF No. 27 at 8.)  On February 22, defendants Van Gerwen, Dorstad, Schritter, Hurte, Jurkievicz, and Mason allegedly pinned plaintiff against the elevator wall without cause, and Page allegedly used a

////

---

[1] Plaintiff does not specify whether he was a pretrial detainee or in custody for violating probation, parole, or supervised release at the time of the alleged constitutional violations.  For purposes of screening, the undersigned therefore assumes that he was a pretrial detainee.  See Vazquez v. County of Kern, 949 F.3d 1153, 1163–64 (9th Cir. 2020) ("[T]he Fourteenth Amendment is more protective than the Eighth Amendment 'because the Fourteenth Amendment prohibits all punishment of pretrial detainees, while the Eighth Amendment only prevents the imposition of cruel and unusual punishment of convicted prisoners.'" (quoting Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004)) (emphasis removed)).

1 | painful wristlock maneuver on his broken hand.  (Id. at 13, 14.)  Plaintiff states that he was

2 | handcuffed and not resisting during both incidents.  (Id. at 8, 13.)

3 |       Plaintiff has alleged minimally sufficient facts to state excessive force claims.  During

4 | both incidents, plaintiff was handcuffed, not posing a security threat, and not resisting, but

5 | defendants used force against him.  (See id. at 9–10, 13.)  Plaintiff will therefore be permitted to

6 | proceed on his excessive force claims against defendants Van Gerwen, Page, Dorstad, Schritter,

7 | Hurte, Jurkievicz, and Mason.

8 | **B.  Deliberate Indifference**

9 | **1.  Legal Standard**

10 | Pretrial detainees alleging inadequate medical care must establish that:

11 |       (i) the defendant made an intentional decision with respect to the
12 | conditions under which the plaintiff was confined;

13 |       (ii) those conditions put the plaintiff at substantial risk of suffering serious harm;

14 |       (iii) the defendant did not take reasonable available measures to abate
15 | that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making
16 | the consequences of the defendant's conduct obvious; and

17 |       (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

18 | Russell v. Lumitap, 31 F.4th 729, 739 (9th Cir. 2022) (citing Gordon v. County of Orange, 888

19 | F.3d 1118, 1125 (9th Cir. 2018) ("Gordon test").  Courts use the same test for determining

20 | whether a convicted prisoner has suffered a serious medical need to determine whether a detainee

21 | faced a substantial risk of serious harm.  Id.  Under that test, a medical need is serious "if the

22 | failure to treat the prisoner's condition could result in further significant injury or the

23 | 'unnecessary and wanton infliction of pain.'"  McGuckin, 974 F.2d at 1059 (quoting Estelle, 429

24 | U.S. at 104).  Indications of a serious medical need include the "existence of an injury that a

25 | reasonable doctor or patient would find important and worthy of comment or treatment; the

26 | presence of a medical condition that significantly affects an individual's daily activities; or the

27 | existence of chronic and substantial pain."  Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000)

28 | (quoting McGuckin, 974 F.2d at 1059–60).

1       **2.  Analysis**

2           Plaintiff bases his inadequate medical care claim on three events: (1) Van Gerwen's use of

3   force on February 1, during which plaintiff states Van Gerwen "acted with deliberate indifference

4   regarding [his] broken hand and foot"; (2) the confiscation of his ulnar splint, the extra blanket,

5   and the written authorization ("chrono") permitting him to possess these items; and (3) Millis and

6   Brown's alleged refusal to accept his ADA grievances in the week after the February 1 use of

7   force.  (ECF No. 27 at 11–12.)  Plaintiff has successfully pleaded an inadequate medical care

8   claim as to second event, but not the remaining allegations.

9               **a.  February 1, 2019 Use of Force**

10          In claims alleging inadequate medical care, corrections staff can be held liable for

11  "intentionally denying or delaying access to medical care or intentionally interfering with the

12  treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104–05 (1976) (internal footnotes

13  omitted); Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999).  As it concerns the

14  February 1 use of force, plaintiff has not accused Van Gerwen of denying or delaying his access

15  to medical care for his broken bones, or interfering with his prescribed treatment.  Rather, he

16  alleges that Van Gerwen applied objectively unreasonable force with deliberate disregard to his

17  broken bones.  Kingsley, 576 U.S. at 396–97.  As such, plaintiff has failed to state an inadequate

18  medical care claim against Van Gerwen for the February 1 incident.

19          **b.  Confiscation of plaintiff's ulnar cast, extra blanket, and chrono**

20          Plaintiff has shown that defendant Mason or, alternatively, defendants Mason and Van

21  Gerwen,[2] interfered with his prescribed medical care by removing his splint, extra blanket, and

22  chrono permitting him to possess these items.  To the first prong of the Gordon test, the pleadings

23  indicate Mason acted intentionally when he confiscated plaintiff's blanket and splint.  Mason

24  allegedly wrote in an incident report that he removed the blanket and "excessive gauze" from

25  plaintiff's cell on February 1.  (Id. at 11.)  Plaintiff states that "there was no 'excessive gauze' in

26  ////

---

27  [2] "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically,
    either in a single count or defense or in separate ones. If a party makes alternative statements, the
28  pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).

[his] cell" and that the splint "looked like a cast, not a bunch of gauze," thus implying that Mason deliberately misclassified his splint as excessive gauze to justify confiscating it.  (Id.)

Regarding the chrono, plaintiff claims that it "disappeared" after Van Gerwen searched his cell on February 1.  (Id.)  Plaintiff was later able to obtain a copy of the chrono through a record request.  (Id.)  Accepting plaintiff's factual allegations as true, it can be reasonably inferred that Van Gerwen or Mason removed the chrono, where plaintiff's chrono was present in his cell on February 1, Van Gerwen and Mason each entered his cell on that day, Mason admitted to removing other items from plaintiff's cell, and plaintiff could not find the chrono in his cell after Van Gerwen's cell search.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

To the second prong of the test, plaintiff has shown that his broken hand and foot presented a substantial risk of serious harm, because they would have constituted a serious medical need if plaintiff had been a convicted prisoner.  Russell, 31 F.4th at 739.  Courts have long recognized these injuries as presenting a serious medical need.  See Jett v. Prenner, 439 F.3d 1091, 1098 (9th Cir. 2006) (plaintiff's broken thumb constituted a serious medical need); Collins v. Lopez, No. 1:11–cv–01534 LJO SKO PC, 2013 WL 6047616, at *2 (E.D. Cal. Nov. 14, 2013) ("A broken hand is unquestionably an objectively serious medical need, as is the need for pain relief following a fracture."); Schafer v. Curry, No.  C 08–1881 RMW (PR), 2009 WL 1562957, at *9 (N.D. Cal. Jun. 3, 2009) ("A broken foot is a type of injury that a reasonable doctor or patient would find important to treat.").

Third, Mason or, alternatively, Mason and Van Gerwen, did not take reasonably available measures to abate the risk to plaintiff when they removed plaintiff's splint, blanket, and chrono. Plaintiff's medical provider prescribed these items to mitigate the risk posed by his broken bones, and their confiscation interfered with plaintiff's prescribed treatment.  Cf. Wakefield, 177 F.3d at 1165 ("[A]llegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference.").

Finally, plaintiff alleges in part that, as a result of losing access to his splint, extra blanket, and chrono, he has suffered "reduced hand motion, difficulty with fine motor skills, randomly

1  dropping lightweight things, pain/tightness in thumb tendons, nerve damage" in his hand, spasms

2  in his left thumb, and "chronic foot pain." (ECF No. 27 at 11.)  These pleadings meet the injury

3  requirement.  Russell, 31 F.4th at 739.

4      For these reasons, plaintiff has stated a cognizable inadequate medical care claim as to the

5  confiscation of his splint, extra blanket, and chrono, and may proceed on this claim against

6  defendants Mason and Van Gerwen.

7                    **c.  Refusal to accept ADA grievances**

8      The pleadings fail to show that Millis or Brown impeded plaintiff's access to medical care

9  after the February 1 incident.  On February 3, two days after the incident, plaintiff requested a

10  new splint; he does not state whether he requested a new blanket to elevate his foot.  (ECF No. 27

11  at 12.)  The next day, he asked Millis to "follow up on" his request, but Millis allegedly refused.

12  (Id.)  He also claims that on February 8, Brown refused to accept an ADA grievance he had

13  attempted to submit regarding Van Gerwen's actions.  (Id.)  Nonetheless, plaintiff states that, by

14  February 8, he had a new splint.  (Id. at 17.)

15      Plaintiff's request for a new splint was therefore received and granted within a week, and

16  he was not denied medical care.  Moreover, plaintiff has not accused Millis or Brown of refusing

17  to accept his request for a new splint, and although Millis refused to check the status of plaintiff's

18  request, he did so only once, a mere day after plaintiff submitted it.  Accordingly, plaintiff has

19  failed to state an inadequate medical care claim against Millis and Brown.

20              **C.  Retaliation**

21                  **1.  Legal Standard**

22      To plead retaliation in violation of the First Amendment and to recover under 42 U.S.C. §

23  1983, a plaintiff must show: (1) an assertion that a state actor took some adverse action against an

24  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

25  inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

26  legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2004).  To rise

27  to a constitutional violation, the defendant's adverse action "must be of a nature that would stifle

28  someone from speaking out."  Blair v. Bethel Sch. Dist., 608 F.3d 540, 544 (9th Cir. 2010).

Examples of adverse actions are "'exercise[s] of governmental power' that are 'regulatory, proscriptive, or compulsory in nature' and have the effect of punishing someone for his or her speech." Id. (quoting Laird v. Tatum, 408 U.S. 1, 11 (1972)).

### 2.  Analysis

Plaintiff alleges that defendants retaliated against him for filing grievances regarding the February 1 incident.  His claim is twofold.  First, he claims that defendants Page, Dorstad, Schritter, Hurte, Jurkiewicz, Mason, and Van Gerwen retaliated by using excessive force against him on February 22.  (ECF No. 27 at 18.)  Second, he accuses defendants Millis and Brown of retaliating by refusing to accept ADA grievances from him or to follow up on his request for a new splint.  (Id. at 17.)  As discussed below, plaintiff has stated a cognizable retaliation claim as to the February 22 incident, but not against Millis and Brown.

### a.  February 22, 2019 Use of Force

Plaintiff states that, following the February 1 incident, he submitted a grievance against Van Gerwen, along with several ADA grievances.  (ECF No. 27 at 16–17.)  Subsequently, on February 22, defendants Dorstad, Schritter, Hurte, Jurkiewicz, Mason, and Van Gerwen allegedly tackled him on an elevator and pinned him to the wall, even though he was handcuffed and not resisting.  (Id. at 13.)  Defendant Page then allegedly used a painful wristlock maneuver on plaintiff's broken hand and told plaintiff, "You better not submit another fucking grievance or ADA form, or ELSE!"  (Id. at 13.)  Plaintiff "took that [statement] as a threat on [his] life."  (Id.)  These allegations satisfy the first three elements of the retaliation standard.

As to the fourth element, "an objective standard governs the chilling inquiry; a plaintiff does not have to show that his speech was actually inhibited or suppressed, but rather that the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities."  Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Rhodes, 408 F.3d at 568–69) (internal quotation marks omitted) (emphasis omitted).  The threat of physical violence satisfies this standard.  Watison v. Carter, 688 F.3d 1108, 1116 (9th Cir. 2012).

Here, Page allegedly warned plaintiff against filing future grievances "or ELSE" while using a painful wristlock maneuver on his broken hand.  (Id. at 13.)  Immediately prior to Page

1    making this statement, six other defendants had tackled plaintiff and pinned him to the wall,

2    causing him pain and making it difficult for him to breathe.  (Id.)  Given this context, Page's

3    alleged statement could be reasonably understood as a threat to inflict pain on plaintiff should he

4    file another grievance.  This type of threat would deter an ordinary person from engaging in

5    protected speech.  Watison, 688 F.3d at 1116.

6            To the fifth element, whether the use of force served a legitimate penological goal,

7    plaintiff states that he was handcuffed and not resisting when officers tackled him and when Page

8    applied force to his broken hand.  On these facts, the use of force did not serve a legitimate

9    penological purpose.

10           Plaintiff has therefore pleaded a cognizable retaliation claim for the February 22 incident.

11   His retaliation claim may proceed against defendants Page, Dorstad, Schritter, Hurte, Jurkiewicz,

12   Mason, and Van Gerwen.

13                          **b.  Alleged retaliation by Millis and Brown**

14           As discussed above, plaintiff's request for a replacement splint was received and granted

15   within a week of Mason confiscating it.  (ECF No. 27 at 17.)  Additionally, plaintiff was able to

16   obtain a copy of his grievance against Van Gerwen through a record request, and although it was

17   missing pages, plaintiff blames Van Gerwen for this omission, not Millis or Brown.  (Id. at 16.)

18   Plaintiff has therefore failed to state a retaliation claim against defendants Millis and Brown.

19                      **D.  Bane Act Claim**

20                          **1.  Legal Standard**

21            "The Bane Act authorizes individual civil actions for damages and injunctive relief by

22   individuals whose federal or state rights have been interfered with by threats, intimidation, or

23   coercion."  Brown v. County of Mariposa, No. 1:18-cv-01541 LJO SAB, 2019 WL 1993990, at

24   *12 (E.D. Cal. May 6, 2019).  "The essence of a Bane Act claim is that the defendant, by the

25   specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the

26   plaintiff from doing something he or she had the right to do under the law or to force the plaintiff

27   to do something that he or she was not required to do under the law."  Austin B. v. Escondido

28   Union Sch. Dist., 57 Cal. Rptr. 3d 454, 472 (Cal. Ct. App. 2007).  "To state a Bane Act claim, '[a]

14

1   plaintiff must show (1) intentional interference or attempted interference with a state or federal

2   constitutional or legal right, and (2) the interference or attempted interference was by threats,

3   intimidation or coercion.'"  Estate of Hennefer v. Yuba County, No. 2:22-cv-00389 TLN KJN,

4   2023 WL 4108077, at *7 (E.D. Cal. June 21, 2023) (quoting Allen v. City of Sacramento, 183

5   Cal. Rptr. 3d 654, 676 (Cal. Ct. App. 2015)) (alteration in original).  "However, federal district

6   courts have declined to apply supervisor liability to Bane Act claims."  Id.

7            **2.  Analysis**

8            Plaintiff has stated a Bane Act claim with respect to the February 1 and 22 incidents.

9   "[I]n excessive force cases, including Eighth Amendment cases, [the Bane Act] does not require

10  proof of coercion beyond that inherent in the underlying violation."  Rodriguez v. County of Los

11  Angeles, 891 F.3d 776, 802 (9th Cir. 2018).  In such cases, courts apply a two-part test to

12  determine whether a defendant specifically intended to interfere with the plaintiff's legal rights:

13          The first [part] is a purely legal determination. Is the . . . right at issue
            clearly delineated and plainly applicable under the circumstances of
14          the case?  If the trial judge concludes that it is, then the jury must
            make the second, factual, determination.  Did the defendant commit
15          the act in question with the particular purpose of depriving the citizen
            victim of his enjoyment of the interests protected by that . . . right?
16          If both requirements are met, even if the defendant did not in fact
            recognize the [unlawfulness] of his act, he will be adjudged as a
17          matter of law to have acted [with the requisite specific intent]—
            i.e., in reckless disregard of constitutional [or statutory] prohibitions
18          or guarantees.

19  Scalia v. County of Kern, 308 F. Supp. 3d 1064, 1083 (E.D. Cal. 2018) (quoting Cornell v. City

20  & County of San Francisco, 225 Cal. Rptr. 3d 356, 386 (Cal. Ct. App. 2017)) (quotation marks

21  omitted) (alterations in original).

22          Here, plaintiff had a clearly delineated right to be free from the use of excessive force.

23  Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015).  That right was plainly applicable on

24  February 1, when Van Gerwen allegedly used a painful maneuver on plaintiff's broken hand

25  while plaintiff was handcuffed and not resisting.  Prior to applying this maneuver, Van Gerwen

26  allegedly told plaintiff, "Hold still, so I can break your hand."  (ECF No. 27 at 8.)  These

27  allegations sufficiently state a claim that Van Gerwen intended to deprive plaintiff of his right

28  against excessive force.

15

1    Regarding the February 22 incident, plaintiff alleges that defendants Page, Van Gerwen,

2    Dorstad, Schritter, Hurte, Jurkiewicz, and Mason intentionally interfered with his First

3    Amendment right to file grievances by using excessive force against him.  On these grounds, too,

4    plaintiff has adequately pleaded a Bane Act violation.

5    As noted above, federal courts have declined to construe the Bane Act as authorizing

6    supervisory liability claims.  Estate of Hennefer, 2023 WL 4108077, at *7.  Plaintiff's Bane Act

7    claim therefore cannot proceed against the municipal or supervisor defendants, because he has not

8    provided any facts to show they played a direct role in the February 1 and February 22 incidents.

9    Plaintiff has stated a cognizable Bane Act claim against defendants Page, Van Gerwen,

10    Dorstad, Schritter, Hurte, Jurkiewicz, and Mason.  He may proceed on this claim.

11    **E.  Policy and Supervisory Liability Claims**

12    Plaintiff also sues the County, SCSO, Boseko, Magrini, Randall, and Kent in their

13    policymaking and supervisory roles.  According to plaintiff, the County, SCSO, Boseko, Magrini,

14    Randall, and Kent have adopted a policy of denying detainees "the right to fully grieve their

15    complaints, without impeding the process"; denying detainees "the right to adequate medical

16    care/treatment"; failing to instruct corrections staff not to use excessive force on compliant

17    detainees or ignoring corrections staff's "wanton disregard of the rules in place"; failing to

18    discipline corrections staff for violating detainees' constitutional rights; failing to "reinforce"

19    training mandated under California law; failing to comply with the ADA; tolerating "the use of

20    routine, and often unreported" excessive force against detainees and "sadistic acts of cruel and

21    unusual punishment by" corrections staff; failing to properly investigate these incidents and

22    ignoring "repetitive bad actions" by corrections staff; permitting corrections staff to file false

23    reports; failing to report incidents and covering them up; and tolerating a "code of silence among

24    staff." (Id. at 20, 23, 25.)  In support, he points to seven lawsuits filed with this court that he

25    believes present similar fact patterns, as well as news articles discussing the death rate of

26    detainees at Shasta County Jail.  (Id. at 4, 5.)

27    These claims fail because plaintiff has not alleged an actionable custom or policy, and

28    because Section 1983 prohibits claims based on supervisory liability.

1    **1.  Custom or Policy**

2    Plaintiff has failed to plead a custom or policy upon which he can seek relief.  To allege a

3    defendant instituted a policy that harmed him, plaintiff must: (1) identify that policy with

4    specificity, (2) show that the defendant was directly responsible for it, (3) show that the defendant

5    knew the policy could cause plaintiff harm, and (4) show how the policy caused him harm.  See

6    Starr v. Baca, 652 F.3d 1202, 1207–08 (9th Cir. 2011).  Liability for a custom or practice will

7    only attach if a plaintiff pleads facts showing that his injury was caused by a "permanent and

8    well-settled" practice.  Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989),

9    overruled on other grounds by Bull v. City and County of San Francisco, 595 F.3d 964 (9th Cir.

10   2010); see also Trevino v. Gates, 99 F.3d 911, 918 (1996) ("Liability for improper custom may

11   not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

12   duration, frequency and consistency that the conduct has become a traditional method of carrying

13   out policy.").

14   Plaintiff's pleadings regarding the municipal and supervisor defendants' alleged custom or

15   policy are conclusory and conjectural.  He does not state any facts to support his assertions that,

16   as of February 1, 2019, these defendants knew of and consciously ignored staff misconduct.

17   Plaintiff cites other federal lawsuits to establish that the municipal and supervisor

18   defendants knew of staff misconduct and implemented a custom or policy of tolerating such

19   conduct.  This court has applied the following test to determine whether previously filed lawsuits

20   are sufficient to plead the existence of a custom or policy:

> To determine whether this history of previous lawsuits is sufficient
> to plausibly allege a municipal policy, custom or practice at the
> pleading stage, the court considers all of the relevant factors,
> including (1) the number of prior lawsuits; (2) the allegations in those
> lawsuits, including the degree of similarity between the facts alleged
> in the prior lawsuits and the facts alleged in the action under
> consideration; (3) the timing of the prior lawsuits; (4) the disposition
> of the prior lawsuits; (5) the number and identity of defendants in the
> prior lawsuits, including whether the municipality itself was a
> defendant and whether any of the defendants in the prior lawsuits
> were the same as the defendants in the case under consideration; and
> (6) the size of the municipality in relation to the number and type of
> lawsuits.

28   ////

17

1   Lesher v. City of Anderson, No. 2:21-cv-00386 WBS DMC, 2021 WL 5744691, at *4 (E.D. Cal.

2   Dec. 2, 2021).

3            In total, plaintiff cites seven cases, two of which were brought by the same plaintiff.

4   Three were brought against the County or the Shasta County Jail; six against Van Gerwen; two

5   against Jurkiewicz; two against Brown; and one against Page, Schritter, Hurte, Bosenko, and

6   Kent, respectively.  Jones v. Gonzales, 2:21-cv-1576 DAD CKD, ECF No. 1 (E.D. Cal. Sep. 2,

7   2021) (naming six defendants, including Van Gerwen and Brown); Heggie v. Shasta County Jail,

8   2:20-cv-2484 TLN DB, ECF No. 1 (E.D. Cal. Dec. 16, 2020) (naming three defendants, including

9   Shasta County Jail and Van Gerwen); Abbie v. Shasta County, 2:20-cv-1995 KJM DMC, ECF

10  No. 70 (E.D. Cal. Mar. 20, 2023) (naming several defendants, including Shasta County, Bosenko,

11  Kent, Van Gerwen, and Schritter); Rabbie v. Shasta County Corrections Facility, 2:20-cv-0514

12  TLN DB, ECF No. 6 (E.D. Cal. Sep. 10, 2020) (naming Shasta County Correctional Facility as

13  defendant and alleging excessive force by Van Gerwen); Rood v. Lockwood, 2:20-cv-0271 KJM

14  AC, ECF No. 11 (E.D. Cal. May 26, 2020) (naming four defendants, including Van Gerwen,

15  Hurte, and Jurkiewicz); Rood v. Lockwood, 2:19-cv-1806 KJM AC, ECF No. 1 (E.D. Cal. Sep.

16  11, 2019) (naming four defendants, including Van Gerwen); Arendas v. Moore, 2:19-cv-1609

17  JAM CKD, ECF No. 1 (E.D. Cal. Aug. 20, 2019) (naming seven defendants, including Van

18  Gerwen, Brown, and Page).  Each alleges excessive force, and five describe potentially retaliatory

19  behavior.

20           However, none of these cases has been adjudicated on the merits; two are in the discovery

21  phase, one has a pending motion for summary judgment, one is awaiting service on the defendant,

22  and the others have been dismissed.  See Jones v. Gonzales, 2:21-cv-1576 DAD CKD, ECF No.

23  33 (E.D. Cal. May 2, 2023) (directing service on remaining defendant); Heggie v. Shasta County

24  Jail, 2:20-cv-2484 TLN DB, ECF No. 19 (E.D. Cal. Aug. 8, 2021) (dismissed for failure to

25  prosecute); Abbie v. Shasta County, 2:20-cv-1995 KJM DMC, ECF No. 82 (E.D. Cal. Jun. 29,

26  2023); Rabbie v. Shasta County Corrections Facility, 2:20-cv-0514 TLN DB, ECF No. 15 (E.D.

27  Cal. Apr. 14, 2021) (dismissed for failure to state a claim and obey a court order); Rood v.

28  Lockwood, 2:20-cv-0271 KJM AC, ECF No. 63 (E.D. Cal. Nov. 21, 2022) (pending motion for

summary judgment); <u>Rood v. Lockwood</u>, 2:19-cv-1806 KJM AC, ECF No. 75 (E.D. Cal. May 18,

2023); <u>Arendas v. Moore</u>, 2:19-cv-1609 JAM CKD, ECF No. 8 (E.D. Cal. Feb. 3, 2020) (notice

of voluntary dismissal).  "[W]ithout a judgment against the defendants, the allegations of a

complaint are little more than unproven allegations."  <u>Lesher</u>, 2021 WL 5744691, at *5.

Additionally, the events alleged in these lawsuits occurred between July and November

2019.  <u>Jones v. Gonzales</u>, 2:21-cv-1576 DAD CKD, ECF No. 1 (E.D. Cal. Sep. 2, 2021)

(September 2019); <u>Heggie v. Shasta County Jail</u>, 2:20-cv-2484 TLN DB, ECF No. 1 (E.D. Cal.

Dec. 16, 2020) (no date specified); <u>Abbie v. Shasta County</u>, 2:20-cv-1995 KJM DMC, ECF No.

70 (E.D. Cal. Mar. 20, 2023) (September 2019); <u>Rabbie v. Shasta County Corrections Facility</u>,

2:20-cv-0514 TLN DB, ECF No. 6 (E.D. Cal. Sep. 10, 2020) (July 2019); <u>Rood v. Lockwood</u>,

2:20-cv-0271 KJM AC, ECF No. 11 (E.D. Cal. May 26, 2020) (October and November 2019);

<u>Rood v. Lockwood</u>, 2:19-cv-1806 KJM AC, ECF No. 1 (E.D. Cal. Sep. 11, 2019) (August and

September 2019); <u>Arendas v. Moore</u>, 2:19-cv-1609 JAM CKD, ECF No. 1 (E.D. Cal. Aug. 20,

2019) (August 2019).  This four-month period is not sufficient to plead "a 'permanent and well-

settled' practice."  <u>Thompson</u>, 885 F.2d at 1444.

The news articles plaintiff cites are also unavailing, because they do not establish the

custom or policy alleged by plaintiff.  Each article discusses potentially inadequate medical care

at the Shasta County Jail, but not allegations of excessive force, retaliation, or other forms of

misconduct.  To the extent these articles could substantiate a custom of denying detainees

adequate medical care, plaintiff cannot make the requisite showing that the custom harmed him.

<u>Starr</u>, 652 F.3d at 1207–08.  Jail officials adequately addressed his medical needs when they

replaced his splint within a week of Mason confiscating it.

For the foregoing reasons, plaintiff has not pleaded a custom or policy for which the

municipal defendants can be held liable.  The undersigned recommends that plaintiff's "municipal

liability" and "<u>Monell</u>" claims (Claims 5 and 8) be dismissed.

### 2.  Supervisory Liability

As noted above, prison officials may not be held liable under a theory of respondeat

superior.  <u>Iqbal</u>, 556 U.S. at 676.  When a named defendant holds a supervisorial position, the

1    causal link between him and the claimed constitutional violation must be specifically alleged.

2    That is, a plaintiff must plead sufficient facts showing that the official has violated the

3    Constitution through his own individual actions by linking the official with some affirmative act

4    or omission that demonstrates a violation of plaintiff's federal rights. Ashcroft v. Iqbal, 556 U.S.

5    662, 676 (2009). See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld,

6    589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement

7    of official personnel in civil rights violations are not sufficient. See Ivey v. Bd. of Regents, 673

8    F.2d 266, 268 (9th Cir. 1982).

9        Plaintiff has not alleged that the supervisor defendants took specific, individual actions in

10    connection to the February 1 and February 22 incidents. He offers only conclusory statements

11    about their failure to address staff misconduct. Accordingly, the undersigned recommends that

12    plaintiff's "supervisory liability" claim (Claim 6) be dismissed.

13            **F. Legal Mail Claim**

14        Plaintiff also claims that defendants Doe 1 and Doe 2 improperly read his legal mail

15    outside his presence in late 2020, when they opened mail sent to plaintiff from this court

16    regarding the instant lawsuit. Inmates have a protected First Amendment interest in having

17    properly marked civil legal mail opened only in their presence. Hayes v. Idaho Corr. Ctr., 849

18    F.3d 1204 (9th Cir. 2017). However, mail from United States courts is not considered legal mail

19    and is not required to be opened in a prisoner's presence. Id. at 1211. Plaintiff has therefore

20    failed to state a First Amendment claim against Doe 1 and Doe 2, and the undersigned

21    recommends that Claim 9 be dismissed.

22           **V.   No Leave to Amend**

23        "A district court should not dismiss a pro se complaint without leave to amend unless 'it is

24    absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" Rosati

25    v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting Akhtar v. Mesa, 698 F.3d 1202, 1212

26    (9th Cir. 2012)). This court finds that amendment would be futile. Plaintiff filed this case more

27    than three years ago, in February 2020. He has had five opportunities to plead a cognizable claim

28    against the County, SCSO, and defendants Bosenko, Magrini, Randall, Kent, Brown, and Millis,

1  but has failed to do so.  The court therefore finds it appropriate to decline to grant leave to

2  amend.  See Newland v. Dalton, 81 F.3d 904, 907 (9th Cir. 1996) ("While Fed. R. Civ. P.

3  15(a) encourages leave to amend, district courts need not accommodate futile amendments.");

4  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996) (denial of leave to amend is not

5  an abuse of discretion where further amendment would be futile).  He will be permitted to

6  proceed on his cognizable excessive force, retaliation, deliberate indifference, and Bane Act

7  claims.

8                                             **CONCLUSION**

9           For the foregoing reasons, IT IS HEREBY ORDERED as follows:

10     1.   Plaintiff's fourth amended complaint (ECF No. 27) states cognizable claims under 42

11          U.S.C. § 1983 and Cal. Civ. Code § 52.1 against defendants Van Gerwen, Page,

12          Dorstad, Schritter, Hurte, Jurkiewicz, and Mason for use of excessive force and

13          retaliation in violation of plaintiff's rights under the Fourteenth Amendment and First

14          Amendment.  It also states a cognizable claim against defendants Mason and Van

15          Gerwen for deliberate indifference to plaintiff's serious medical needs in violation of

16          the Fourteenth Amendment.

17     2.   The fourth amended complaint (ECF No. 27) fails to state any other cognizable

18          claims.

19     3.   The Clerk of the Court shall amend the docket to correctly identify defendants

20          Vangerwen and Jerkowitz as Deputy Robert M. Van Gerwen and Deputy Zachary S.

21          Jurkiewicz.

22     4.   Defendants Danis, Reed, Bailey, Smith, Kammezel, and Cole shall be terminated from

23          the docket as plaintiff no longer names them as defendants to this action.

24     IT IS HEREBY RECOMMENDED that:

25     1.   Claims 5, 6, 8, and 9 of the fourth amended complaint (ECF No. 27) be dismissed; and

26     2.   The claims against defendants County of Shasta, Shasta County Sheriff's Office,

27          Former Shasta County Sheriff Tom Bosenko, Former Shasta County Sheriff Eric

28  ////

1    Magrini, Captain David M. Kent, Captain Gene B. Randall, Deputy Joshua R. Millis,

2    Deputy Brandon L. Brown, Doe 1, and Doe 2 be dismissed from this action.

3        These findings and recommendations are submitted to the United States Magistrate Judge

4    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty days

5    after being served these findings and recommendations, plaintiff may file written objections with

6    the court and serve a copy on all parties.  Such a document should be captioned "Objections to

7    Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file

8    objections within the specified time may waive the right to appeal the District Court's order.

9    Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10

11   Dated:  September 7, 2023

12

13

14                                    DEBORAH BARNES
                                      UNITED STATES MAGISTRATE JUDGE
15

16

17   DB:15
     DB/DB Prisoner Inbox/Civil Rights/S/ande0246.scrn_4ac
18

19

20

21

22

23

24

25

26

27

28