UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN DAVID ANDERSON,<br>Plaintiff,<br>v.<br>ROBERT M. VANGERWEN, et al.,<br>Defendants. | No. 2:20-cv-00246 DC SCR<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff is incarcerated in a Washington state prison and proceeding pro se and in forma pauperis with this civil rights action under 42 U.S.C. § 1983. Defendants have filed a motion for summary judgment. ECF No. 52. For the reasons set forth below, the undersigned recommends the motion be GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED in favor of Defendants Vangerwen and Mason on Plaintiff's Fourteenth Amendment Inadequate Medical Care Claim (Count Two);
2. GRANTED in favor of Defendants Vangerwen, Dorstad, Schritter, Hurte, Jurkievicz, and Mason and Plaintiff's Fourteenth Amendment Excessive Force Claim (Count Three)
3. GRANTED in favor of Defendants Dorstad, Schritter, Hurte, Jurkiewicz, Mason, and Vangerwen on Plaintiff's First Amendment Retaliation claim (Count Four);
4. GRANTED in favor of Defendants Dorstad, Schritter, Hurte, Jurkiewicz, Mason, and Vangerwen on Plaintiff's Bane Act Claim for the incident on February 22, 2019 (Count Seven);

5. DENIED as to Plaintiff's Fourteenth Amendment Excessive Force claim against Defendant Vangerwen (Count One);

6. DENIED as to Plaintiff's Fourteenth Amendment Excessive Force claim against Defendant Page (Count Three); and

7. DENIED as to Plaintiff's Bane Act claim against Defendant Vangerwen regarding the alleged use of force on February 1, 2019, and against Defendant Page for the alleged use of force on February 22, 2019 (Count Seven).

**PROCEDURAL HISTORY**

This action is proceeding on Plaintiff's fourth amended complaint ("FAC") filed on March 20, 2023. ECF No. 27. In the FAC, Plaintiff alleged violations of his constitutional and state statutory rights by several Shasta County Sheriff's Office ("SCSO") officials over two incidents in February 2019 while he was a pretrial detainee in the Shasta County Jail. Id.

On screening under 28 U.S.C. § 1915A, the previously assigned magistrate judge found the FAC stated five cognizable claims for relief: (1) Count One: Fourteenth Amendment excessive force claim against Defendant Vangerwen for an incident on February 1, 2019; (2) Count Two: Fourteenth Amendment medical indifference claim against Defendant Mason or, alternatively, Defendants Mason and Vangerwin, for the confiscation of his ulnar cast, extra blanket, and chrono; (3) Count Three: Fourteenth Amendment excessive force claim defendants Vangerwen, Page, Dorstad, Schritter, Hurte, Jurkievicz, and Mason for an incident on February 22, 2019; (4) Count Four: First Amendment Retaliation claim against Defendants Page, Dorstad, Schritter, Hurte, Jurkiewicz, Mason, and Vangerwen, for using force in retaliation for Plaintiff's grievance against Van Gerwin over the February 1, 2019, incident; and (5) Count Seven: Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1, claim against defendants Page, Vangerwen, Dorstad, Schritter, Hurte, Jurkiewicz, and Mason. ECF No. 28.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. Parties' Filings**

Defendants seek summary judgment on all claims except for Plaintiff's First Amendment retaliation claim against Defendant Page. ECF No. 52. In addition to their memorandum of law,

ECF No. 52-1, Defendants offer a Statement of Undisputed Material Facts, ECF No. 52-2 ("SUMFs"), defendant declarations, ECF Nos. 52-4 to 52-9, and exhibits, including Plaintiff's deposition transcript, ECF No. 52-3, Exh. B ("Anderson Dep.") and video footage from February 1, 2019 (ECF No. 52-3, Exh. C), and February 22, 2019 (ECF No. 52-3, Exh. D). Plaintiff filed an opposition, ECF No. 58, and supporting declarations from himself (ECF No. 58-1) and his mother, Sandra Hershelman (ECF No. 58-2). Plaintiff separately filed a response to Defendants' SUMFs, ECF No. 59 ("Pltf. Resp."), and exhibits, ECF No. 60. Defendants filed a reply that included general and specific objections to Plaintiff's evidence.[1]

**SUMMARY JUDGMENT LEGAL STANDARD**

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

////

[1] Defendants' general objections to Plaintiff's evidence are overruled. This objection challenges Plaintiff's on several procedural grounds, including failure to properly authenticate. See ECF No. 66-2 at 2 ("[P]laintiff did not submit an affidavit as to each document, or an affidavit confirming he is a person with knowledge who can attest to the authenticity of any of his Exhibits."). The Ninth Circuit has consistently held that "[c]ourts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Soto v. Sweetman, 882 F.3d 865, 872 (9th Cir. 2018) (citing Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010)). While the exception for pro se inmates does "not entirely release [an inmate] from any obligation to identify or submit some competent evidence supporting his claim," id., Plaintiff here has demonstrated substantial compliance with Fed. R. Civ. 56 and Local Rule 260. The undersigned will address Defendants' specific objections below, where relevant.

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Adv. Comm. Note to 1963 Amendments to Fed. R. Civ. P. 56(e)).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## DISCUSSION

### I. Count One: Fourteenth Amendment Excessive Force (Defendant Vangerwen)

#### A. Legal Standard

Plaintiff's first claim alleges excessive force by Defendant Van Gerwan on February 1, 2019. Because Plaintiff was a pretrial detainee during all the events underlying the FAC, the undersigned analyzes his excessive force claims under the Fourteenth Amendment. See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1069-70 (9th Cir. 2016) (en banc) (pretrial detainees' excessive force claims "arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause").

To prevail on a Fourteenth Amendment excessive force claim, a plaintiff must show that the official's use of force was (1) deliberate (in other words, purposeful or knowing); and (2) objectively unreasonable. Kingsley v. Hendrickson, 576 U.S. 389, 395-97 (2015). With respect to the first element, an officer's negligent or accidental use of force is not sufficient. Id. As to the second element, objective reasonableness turns on the facts of each case, such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. at 397. Objective reasonableness is assessed

based on the information known to the officer at the time. Id.

**B. Facts**

When Plaintiff arrived at Shasta County Jail on December 29, 2018, he used an ulnar splint and medical boot for a broken hand and broken foot, respectively, and still possessed those items on February 1, 2019. SUMF 1-3. On that date, Defendants Vangerwen and Mason entered plaintiff's cell to search for contraband. SUMF 4. Plaintiff was sitting on the lower bunk without his boot or splint. SUMF 5. Vangerwen and Mason state that they demanded Plaintiff and his cellmate get down (Plaintiff alleges they yelled, "Get the fuck down!"). SUMF 6; Pltf. Resp. 6, ECF No. 59 at 3. Defendant Mason confiscated Plaintiff's extra blanket and noticed he had an excessive amount of gauze. SUMF 7-9. Plaintiff maintains that what Mason refers to as "gauze" was actually his splint, and that Defendants did not give Plaintiff an opportunity to present his authorization for the blanket and instead called him a "liar." Pltf. Resp. 7-9.

It is undisputed that Vangerwen then ordered Plaintiff to stand up, turned Plaintiff away from him, handcuffed Plaintiff's hands behind his back, used a wristlock, and pushed Plaintiff against the wall. SUMF 10-12. Vangerwen disputes Plaintiff's claim that he was fully compliant during these events and states that Plaintiff "stood up in an aggressive manner and clinched his fists." Vangerwen Decl. ¶ 9, ECF No. 52-4 at 2. Plaintiff disputes Defendants' characterization of Vangerwen's wristlock as "brief," and states that when he told Defendant Vangerwen about his broken hand, Vangerwen replied, "Hold still, so I can break your hand." Pltf. Resp. 12.

Vangerwen, with Mason following, escorted Plaintiff out of the cell and sat him in a chair at a dayroom table without incident. SUMF 13. At Plaintiff's request, Mason entered his cell and brought his medical boot to the dayroom table. SUMF 14. Plaintiff then placed his foot in the medical boot. SUMF 15. Defendants maintain that they assisted Plaintiff up from the table and that he fell without any force from Vangerwen. Id. Plaintiff claims that he did not have an opportunity to request the boot be secured or secure it himself, and that he fell out of the unsecured boot when Defendant Vangerwen lifted him by his elbow. Pltf. Resp. 15-16. Plaintiff claims Vangerwen then dragged him across the floor. Pltf. Res. 16.

The Parties' lodged video of Vangerwen escorting Plaintiff to the dayroom table (the

Parties did not submit video of the wristlock inside Plaintiff's cell). ECF No. 52-3, Exh. E. The footage shows Plaintiff, handcuffed behind his back, visibly limping the short distance from his cell door to the dayroom table. Exh. E, 9:32-41. Defendant Mason drops the medical boot near Plaintiff's left foot and Plaintiff slides his foot in. Id., 9:42-51. After Plaintiff and Vangerwen speak for less than a minute,[2] 9:52-10:40, Vangerwen grasps Plaintiff around the elbow and lifts him up. Plaintiff takes one step before his foot comes out of the unsecured medical boot and he falls to the floor. Plaintiff gets to his knees and stands up before the video ends. Id., 10:41-59.

**C. Analysis**

The undersigned begins with the dayroom portion of the incident depicted on video. While the Court must ordinarily view the facts in a light most favorable to the non-movant and give the non-movant the benefit of reasonable inferences, this standard is somewhat modified when there is clear video evidence of the events in question. See Scott v. Harris, 550 U.S. 372, 378 (2007). In Scott, the Supreme Court criticized the lower court's recitation of the facts, in a light favorable to plaintiff, where the "videotape tells quite a different story." Id. at 379. The Supreme Court stated: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. at 380. The Supreme Court concluded that the lower court "should have viewed the facts in the light depicted by the videotape." Id. at 381.

From the video, no reasonable juror could infer excessive force based on the interaction between Plaintiff and Vangerwen at the dayroom table. Consistent with Plaintiff's deposition testimony, Anderson Dep. at 57:9-11, 58:4-6, the video shows Vangerwen assisting Plaintiff up from his chair and does not depict him pushing or otherwise forcing Plaintiff to the ground. Defendants were at most negligent in failing to secure the medical boot while Plaintiff's hands were restrained, but that does not equate to excessive force. Moreover, no reasonable juror could

---

[2] The video does not have audio, but during his deposition Plaintiff recounted that during this brief exchange he told Vangerwen that he was "evil" for using a wristlock on his broken hand. Vangerwen responded that Plaintiff "was a bitch." Anderson Dep. at 52:19-20.

agree with Plaintiff's characterization that Vangerwen "dragged" him across the floor after his fall. The video depicts a few seconds of Vangerwen somewhat clumsily assisting Plaintiff back up as Plaintiff steadied himself on his knees before standing. See Exh. E at 10:43-50.

However, there is a genuine dispute as to whether the off-camera wristlock was excessive. Defendants do not dispute Vangerwen applied a "brief wristlock" on Plaintiff in his cell. SUMF 12. Plaintiff's evidence establishes Vangerwen had knowledge of and commented on his broken hand before applying the technique. See Anderson Decl. ¶ 8, ECF No. 58-1 at 2 ("I promptly told Vangerwen that my hand was broken."); Anderson Dep. at 41:22-24 ("I got against the wall, put my hands behind my back . . . . I said, 'Be careful with my hand because it's broken.'"). Plaintiff also testified that he was not resisting Vangerwen at the time and that the wristlock caused him "intense pain" and "lasting problems" with his hand. Anderson Decl. ¶¶ 7-8, 37; see also Exh. AA, ECF No. 60 at 91 (Feb. 7, 2019, medical provider note noting "obvious" deformity in hand and that "[patient] feels an officer injured his hand while cuffing him").

Viewed in a light most favorable to Plaintiff, this evidence supports the reasonable inference that Vangerwen's actions were not objectively unreasonable. See Hyde v. City of Willcox, 23 F.4th 863, 870 (9th Cir. 2022) ("The most important factor [in the Kingsley analysis] is whether the suspect posed an immediate threat."); Moody v. Simms, No. 15-CV-04198-JSC, 2017 WL 1196796, at *8 (N.D. Cal. Mar. 31, 2017) (holding reasonable trier of fact could find bending back the broken finger of a handcuffed and compliant inmate was excessive force under the Fourteenth Amendment). In other words, it would be clear to any reasonable jail official that it is not reasonable to use a wristlock on a compliant pretrial detainee with a known broken hand. For this same reason, Vangerwen is not entitled to qualified immunity. See Moody, 2017 WL 1196796, at *8 (finding same as to bending back of broken fingers); Alexander v. Nguyen, 78 F.4th 1140, 1144 (9th Cir. 2023) (noting courts "need not discuss qualified immunity" separately from the Kingsley "objective reasonableness" analysis).

Defendants' argument that the wristlock was mere "de minimis" force of a short duration, ECF No. 52-1 at 7-8, does not refute its objective unreasonableness. "If a detainee is complying with orders, then *any* amount of unnecessary force is objectively unreasonable, even if the

detainee previously disobeyed orders." Bell v. Williams, 108 F.4th 809, 822 (9th Cir. 2024) (emphasis in original). Defendants' authorities on this point, Moore v. Machado, No. C 07-0284 SBA(PR), 2009 WL 4051082, at *4–5 (N.D. Cal. Nov. 20, 2009), and Grant v. Palomares, No. 2:11-CV-2302 KJM KJN, 2014 WL 466251, at *17 (E.D. Cal. Feb. 5, 2014) (subsequent history omitted), are distinguishable in that they are Eighth Amendment cases and both arguably apply the "de minimis injury" standard the Supreme Court rejected in Wilkins v. Gaddy, 559 U.S. 34, 39 (2010). Further, neither involved force targeting an allegedly compliant detainee's known injured hand. See, e.g., Grant, 2014 WL 466251, at *17 (granting prison official's motion for summary judgment where there was "no evidence that defendant used force simply to cause plaintiff harm rather than to bring plaintiff under control.").

In sum, while "[n]ot every push or shove, even if it may later seem unnecessary," violates the Constitution, Graham v. Connor, 490 U.S. 386, 396 (1989), a reasonable juror could find that Vangerwen's wristlock of Plaintiff's known broken hand, even if just for a brief moment, crossed the threshold into objective unreasonableness. In so finding, the undersigned notes that "[t]he reasonableness of force used is ordinarily a question of fact for the jury." Garlick v. County of Kern, 167 F.Supp.3d 1117, 1145 (E.D. Cal. 2016) (citing Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.")). The excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions" and the Ninth Circuit has stated on many occasions that summary judgment in the context of excessive force claims "should be granted sparingly." Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012). For all of these reasons, Vangerwen is not entitled to summary judgment on Count One.

## II. Count Two: Fourteenth Amendment Inadequate Medical Care (Defendants Vangerwen and Mason)

### A. Legal Standard

When filed by individuals in pretrial detention, claims of violations of the right to adequate medical care proceed under the Fourteenth Amendment and "must be evaluated under an objective deliberate indifference standard." Gordon v. Cty. of Orange, 888 F.3d 1118, 1124-

25 (9th Cir. 2018) (quoting Castro, 833 F.3d at 1070). The elements of a pre-trial detainee's Fourteenth Amendment medical care claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." Id. "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." Id. (internal quotation omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent – something akin to reckless disregard." (Id.) (internal quotation omitted).

**B. Facts**

Plaintiff's Count Two alleges Defendants Vangerwen and Mason confiscated his ulnar cast, extra blanket, and medical authorization (chrono) for those items during the cell search on February 1, 2019. Defendants Vangerwen and Mason state that they did not notice or remove the ulnar case or medical authorization chrono. SUMFs 17-19. Plaintiff maintains the items were present at the start of the search and missing afterwards, and that the video depicts items being thrown from his cell during the search. Pltf. Resp. 17-19. The Parties agree that Plaintiff received a new splint about a week later that was sturdier than the previous one and a new blanket roughly one month later. SUMFs 20-22. Defendants maintain that Plaintiff cannot identify any injury from the delayed access to these items, SUMF 23, whereas Plaintiff points to his ongoing medical problems with his left hand. Pltf. Resp. 23.

**C. Analysis**

Defendants argue they are entitled to summary judgment because: (1) Plaintiff cannot identify who took his items; and (2) Plaintiff cannot satisfy the fourth Gordon element (causation)

because he did not suffer an injury. ECF No. 52-1 at 14-15. Plaintiff identifies lingering hand problems as the alleged injury, Pltf. Resp. 23, so the undersigned will analyze only the confiscation of the splint and related chrono, not the blanket.[3]

"In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." Bearchild v. Cobban, 947 F.3d 1130, 1150 (9th Cir. 2020) (quoting Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008)). "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." Id. A defendant's conduct is an "actual cause," or "cause-in-fact," of a plaintiff's injury only if the injury would not have occurred but for that conduct. Chaudhry v. Aragon, 68 F.4th 1161, 1170 n.11 (9th Cir. 2023). "A defendant's conduct is a 'proximate cause' of a plaintiff's injury if 'it was not just any cause, but one with a sufficient connection to the result.'" Chaudhry, 68 F.4th at 1170 n.12 (quoting Paroline v. United States, 572 U.S. 434, 444 (2014)). "'Proximate cause is often explicated in terms of foreseeability,' such that the proximate cause requirement 'preclude[s] liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity.'" Id. (quoting Paroline, 572 U.S. at 445)

Even accepting that the "excessive gauze" Mason confiscated was Petitioner's splint, see Pltf. Exh. M, ECF No. 60 at 38, Plaintiff's evidence does not establish a causal link between that deprivation and his hand injury. Plaintiff states in opposition that "[r]emoving a split from a broken hand . . . can cause pain, delay, aggravation, and risk of further injury," ECF No. 58 at 11, but such conclusory assertions are insufficient to create a triable issue. See F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009). At his deposition, Plaintiff similarly could not identify a specific injury stemming from the loss of his splint separate and apart from the intervening wristlock: "I believe that there are some medical documents to show that there is a slight movement in my bone structure, but I don't believe . . . that would be a direct result of the cast

[3] The blanket was an ADA accommodation, Defs. Exh. E, and helped Plaintiff with leg circulation. Anderson Dep. at 72:24-25 to 73:1-72:3 ("The blanket just helps with, you know, blood circulation and stuff, and just getting pressure off my foot.").

and not the wrenching of my hand." Anderson Dep. at 73:8-12. Further, after the splint and chrono were confiscated, Petitioner visited with Physician Assistant D. Dellwo and received a sturdier replacement splint within a week. See Pltf. Exh. AA, ECF No. 60 at 91.

In sum, the record does not support the finding that Mason's confiscation of the splint was the actual or proximate cause of Plaintiff's alleged lingering hand problems. Accordingly, Defendants are entitled to summary judgment on Plaintiff's inadequate medical care claim.

**III. Count Three: Fourteenth Amendment Excessive Force (Defendants Page Jurkiewicz, Dorstad, Hurte, Schritter, Vangerwen, and Mason)**

**A. Facts**

Plaintiff's Count Three alleges that on February 22, 2019, Defendants Vangerwen, Dorstad, Schritter, Hurte, Jurkievicz, and Mason pinned him against the elevator wall without cause and Page used a painful wristlock maneuver on his broken hand. ECF No. 27 at 13-14.

The following facts are undisputed. On February 22, 2019, Defendants Mason, Vangerwen, Schritter, and Dorstad responded to an alarm for a large inmate altercation in the Level 3b dayroom. SUMF 27. During the altercation, Plaintiff struck another inmate multiple times with his right hand. SUMF 28. Defendant Vangerwen and non-defendant Decker led Plaintiff from the scene to a holding cell and then to a room where Decker interviewed Plaintiff. SUMF 29. After the interview, Defendant Page escorted Plaintiff, who was handcuffed, toward an elevator with other deputies following. SUMF 30. Once in inside the elevator, Defendant Page yelled, "Quit resisting! Quit resisting!", and used a wristlock on Plaintiff's handcuffed, broken right hand and wrenched said hand as he held Plaintiff against the wall. SUMF 31-32. Defendants Vangerwen, Dorstad, Schritter, Hurte, Jurkiewicz, and Mason then rushed into the elevator and pinned Plaintiff in an "upright dogpile" against the wall of the elevator. SUMF 33. After the elevator arrived at Plaintiff's floor and the door opened, Defendant Page escorted Plaintiff to his cell while maintaining a wristlock on his broken hand, such that he was forced onto his "tippy toes." SUMF 38. After bringing Plaintiff to his cell, Page ordered him to go prone on his stomach, and he complied. SUMF 39. Page then put a knee on Plaintiff's back, and with his hands, pushed on Plaintiff's hands with his full force. SUMF 40.

Plaintiff maintains Defendants' version is incomplete. He states that during the escort to the elevator, Defendant Page slid Plaintiff's splint up his arm and Plaintiff asked Page to be careful of his broken hand. Anderson Decl. ¶ 24, ECF No. 58-1 at 4. As soon as Defendant Page escorted him across the threshold of the elevator, Page yelled "Quit resisting!", used a painful wristlock on Plaintiff's broken hand, and threatened Plaintiff regarding his grievances and ADA forms. Pltf. Resp. 30. Plaintiff states that he cannot "assign every specific movement to a specific deputy," but that all Defendants personally participated in the "upright dogpile." Pltf. Resp. 34. Defendants submitted a brief, twelve-second video of the Parties exiting the elevator but there is no footage of the actual incident. Defs. Exh. D.

### B. Analysis

#### i. Defendant Page

Plaintiff's evidence creates genuine issues as to Defendant Page's prior knowledge of his broken hand and his lack of resistance at the time Page yelled "Quit resisting!" and applied a wristlock. Defendant again asserts that the wrenching was "de minimis"—Plaintiff acknowledges it lasted "a few seconds," Anderson Dep. at 156:13-17—but ignores other relevant Kingsley factors, such as the absence of evidence of any security threat or active resistance by Plaintiff. See Bell, 108 F.4th at 820-21. Therefore, for the same reasons laid out above regarding Plaintiff's claim against Defendant Vangerwen, a reasonable juror could conclude that Defendant Page's actions on February 22, 2019, were objectively unreasonable.

Defendants also overstate the significance of the twelve-second video depicting Page escorting Plaintiff, handcuffed and bent forward, out of the elevator. Defendants argue it dispositively shows he was "able to exit and proceed without any apparent difficulty or struggle," which is "entirely inconsistent with the claimed level of significant force and the asserted inability to breathe or function during the elevator sequence immediately prior." ECF No. 52-1 at 10. Plaintiff maintains the video shows him in "obvious distress." Pltf. Resp. 37. The undersigned finds neither interpretation "is blatantly contradicted by the [video] so that no reasonable jury could believe it," Scott, 550 U.S. at 380, and will not credit Page' interpretation over Plaintiff's interpretation.

Moreover, in the Fourteenth Amendment analysis, courts use the extent of a detainee's injuries to gauge "the amount of force that was used to cause them." Bell, 108 F.4th at 821. Here, the amount of force used by Page—a brief wristlock—is not in question. SUMF 32. A reasonable juror could find that force excessive in light of Plaintiff's alleged lack of resistance and known broken hand. See Bell, 108 F.4th at 823 (denying summary judgment despite "relatively minor" injuries because "substantial evidence showed that they could have been avoided because [Plaintiff] was compliant"). Accordingly, like Defendant Vangerwen on Plaintiff's Count One, Defendant Page is not entitled to summary judgment on Count Two.

**ii. Remaining Defendants (Jurkiewicz, Dorstad, Hurte, Schritter, Vangerwen, and Mason)**

The remaining Defendants who engaged in the "upright dogpile" argue that Plaintiff's claim is "impermissibly collective" in that he "does not identify what each of the Defendants actually did in the elevator, where each was positioned, or what force each applied." ECF No. 52. In response, Plaintiff offers the following description of the event in his declaration:

> As soon as we crossed the elevator threshold, Page yelled, "Quit resisting! Quit resisting! I was not resisting. Immediately after he yelled those words, the other deputies rushed into the elevator.
>
> Page then used a painful wristlock hold on my handcuffed broken hand. Deputies Van Gerwen [sic], Dorstad, Shritter, Hurte, Jurkiewicz, and Mason rushed into the elevator and piled onto me, slamming me against the back wall of the elevator in an upright dogpile. From my peripheral vison, I could see that they were all there and that each of them participated. I was in pain and struggling to breathe. I yelled, "My hand is broken! I'm not resisting! Please stop!" Page continued the extreme wristlock hold, torquing on my handcuffed broken hand beyond its normal range of motion, forcing me up onto my tiptoes, and shaving me hard into the corner of the elevator. The side of my face was smashed into the wall, and my body was crushed by the weight of the deputies piled on me. I yelled, "My hand! My hand!"

Anderson Decl. ¶¶ 25-26, ECF No. 58-1 at 4.[4]

---

[4] Defendants' objection to this testimony as a sham declaration, ECF No. 66-1, is overruled. The sham affidavit rule prevents "a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]" Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (internal quotations and citations

Generally, a person deprives another of a constitutional right, within the meaning of § 1983, "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). Here, Plaintiff's testimony regarding each Defendants' participation in the dogpile is minimally sufficient to link them to the alleged unlawful force. Plaintiff shows personal knowledge of their individual participation and relies on more than their mere "presence" or "membership in a group" that the Ninth Circuit has found insufficient to establish liability under § 1983. See Jones v. Williams, 297 F.3d 930, 939 (9th Cir. 2002).

However, the undersigned is persuaded by Defendants' argument that it is objectively reasonable "to utilize brief force to assist another Deputy when they claim an inmate is resisting during an escort, especially immediately following a large scale inmate altercation." ECF No. 52-1 at 9. In Kingsley, the Supreme Court "stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." 576 U.S. at 399. Unlike Defendant Page, whom Plaintiff alleges used an unprovoked wristlock, the remaining Defendants were responding to Page's yell of "Quit resisting! Quit resisting!" Plaintiff alleges "Quit resisting!" was the cue to attack him, ECF No. 27 at 18, but does not offer any non-conclusory evidence to support that accusation. Even if Page manufactured the emergency, no reasonable juror could find the dogpile participants' brief use of force objectively unreasonable without evidence of a broader plot. Accordingly, Defendants Jurkiewicz, Dorstad, Hurte, Schritter, Vangerwen, and Mason are entitled to summary judgment.

////

////

////

---

omitted). There is no contradiction between Plaintiff's declaration and deposition testimony. In both statements, Plaintiff expresses certainty that all Defendants were present and participated in the use of force, but that he cannot say for certain what each Defendant did. Compare Anderson Decl. ¶¶ 25-26, ECF No. 58-1 at 4 ("From my peripheral vison, I could see that they were all there and that each of them participated."), with Anderson Dep. at 137:12-14 ("I realize that they were all participating in it, but my focus was on Page, who was yelling in my ear[.]").

**IV. Count Four: First Amendment Retaliation (Defendants Dorstad, Schritter, Hurte, Jurkiewicz, Mason, and Vangerwen)**

**A. Legal Standard**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559 567-68 (9th Cir. 2005) (citations omitted). Filing an inmate grievance is a protected action under the First Amendment. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

**B. Analysis**

Plaintiff's First Amendment Claim alleges that Defendants Page, Dorstad, Schritter, Hurte, Jurkiewicz, Mason, and Vangerwen used force on February 22, 2019, in retaliation for Plaintiff's grievance against Vangerwen over the February 1, 2019, incident. ECF No. 27 at 13. Plaintiff filed the grievance on February 3, 2019. Pltf. Exh. T, ECF No. 60 at 56-58. Defendants break their arguments into two separate categories. Defendants Dorstad, Hurte, and Schritter argue that they had no knowledge of Plaintiff's grievance and did not act "because of" his protected conduct. ECF No. 52-1 at 11. Defendants Jurkiewicz and Vangerwen argue their alleged "twice-a-week harassment" is vague and insufficiently connected to the filing of grievances.[5] Id. at 2. The undersigned will address each argument in turn.

**i. Defendants Dorstad, Hurte, and Schritter**

Whether Defendants Dorstad, Hurte, and Schritter had prior knowledge of Plaintiff's grievance is relevant to causation. To establish a retaliatory motive, an incarcerated individual "must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." Johnson v. Ryan, 55 F.4th 1167, 1201-02 (9th Cir. 2022) (citing Brodheim

---

[5] The Defendants also challenge Plaintiff's retaliation claim on the same linkage arguments the undersigned rejected above in the context of Plaintiff's excessive force claim (Count Three). ECF No. 52-1 at 13. Defendant Page, who allegedly threatened Plaintiff not to submit further grievances or ADA forms, "or else," SUMF 35, did not move for summary judgment.

v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009)). A plaintiff may offer "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." McCollum v. Cal. Dep't of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)). Circumstantial evidence of motive includes: (1) proximity in time between the protected conduct and the alleged retaliation, (2) the defendant's expressed opposition to the conduct, or (3) other evidence that the reasons proffered by the defendant for the adverse action were false and pretextual. McCollum, 647 F.3d at 882 (citing Allen, 283 F.3d at 1077).

The undersigned agrees with Defendants that Plaintiff's evidence does not establish a triable issue as to their direct knowledge of the grievance. Plaintiff testified at this deposition that he never talked to Dorstad, Hurte, or Schritter about it. Anderson Dep. at 104:10-25, 105:1-2.

The only potential relevant circumstantial evidence is proximity in time., i.e., the roughly nineteen days between the filing of the grievance and the elevator incident. See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."); Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (a causal connection between the adverse action and the protected conduct can be shown by a chronology of events from which retaliation can be inferred.). But for temporal proximity to support an inference of retaliatory intent, there must be *some* indication the defendants "were made aware" of the protected activity. Pratt, 65 F.3d at 808; see also Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation is not sufficient."). Plaintiff's argument that unnamed officers made "repeated comments to [him] about the February 1 incident" that "support an inference of shared knowledge" among all officers, Pltf. Resp. 42, is too vague and conclusory to establish Dorstad's, Hurte's, or Schritter's awareness. See id. at 808 (holding that information conveyed during a phone call between two prison employees was not attributable to prison staff responsible for allegedly retaliatory prison transfer); Solomon v. Felker, No. 2:08-cv-02544 JFM P, 2013 WL 5375538, at *6 (E.D. Cal. Sept. 24, 2013) (general allegations that "staff" was aware of a grievance is not sufficient to sustain claim against a particular defendant). Accordingly, because there is no genuine dispute as to Defendants'

Dorstad, Hurte, and Schritter retaliatory intent, these three Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

**ii. Defendants Jurkiewicz and Vangerwen**

It is undisputed that between February 1 and February 22, 2019, approximately twice a week, Vangerwen and Jurkiewicz made comments to Plaintiff regarding the February 1, 2019, incident (e.g., "Got a lawyer yet?", Anderson Dep. at 117:3-5). SUMF 26. Defendants' focus on the alleged harassment as the adverse action, ECF No. 52-1 at 12, improperly narrows the focus of plaintiff's retaliation claim. In the FAC and his opposition, Plaintiff framed the alleged adverse action as the use of force in the elevator on February 22, 2019. ECF No. 58 at 13.

Still, Plaintiff maintains the harassment is relevant to causation, as it shows "the February 22 force and threat occurred in the middle of an ongoing grievance . . . and the elevator defendants acted in coordinated way[.]" ECF No. 58 at 13. Vangerwen's and Jurkiewicz's comments do support the reasonable inference that they were at least aware of the grievance. But there is no evidence (e.g., a threat like Page's) that the "substantial or motivating factor" behind Vangerwen's and Jurkiewicz's actions in the elevator was the grievance and not reasonable reliance on Page's call of "Quit resisting!" The alleged connection between their harassment and a conspiracy to attack Plaintiff on Page's cue is purely speculative. A retaliation claim cannot rest solely on the "logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this.'" Huskey v. City of San Jose, 204 F.3d 893, 899 (2000) (quoting Choe v. INS, 11 F.3d 925, 938 (9th Cir. 1993)).

Accordingly, Defendants Vangerwen and Jurkiewicz are entitled to summary judgment on Plaintiff's First Amendment claim. Plaintiff is advised that the retaliation claim against Defendant Page, which is not before the Court on this motion, will proceed to trial.

**V. Count Seven: Bane Act (Defendants Vangerwen, Page, Dorstad, Schritter, Hurte, Jurkiewicz, and Mason)**

The Bane Act provides a cause of action for violations of a plaintiff's state or federal civil rights committed by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1; Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018). The previously assigned magistrate judge

screened in a Bane Act claim against Defendant Vangerwen for the wristlock maneuver on February 1, 2019, and against Defendants Vangerwen, Page, Dorstad, Schritter, Hurte, Jurkiewicz, and Mason for the use of force incident on February 22, 2019. ECF No. 28 at 15-16.

"[T]he use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1.'" Reese, 888 F.3d at 1043 (quoting Cornell v. City & County of San Francisco, 225 Cal.Rptr.3d 356 (Cal. Ct. App. 2017)). However, the Bane Act also requires a "a specific intent to violate the arrestee's right[.]" Id. The Ninth Circuit described specific intent in the excessive force context as follows: "[T]he jury must find that the defendants intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." Id. at 1045 (internal quotations and citation omitted).

Vangerwen's alleged statement, "Hold still, so I can break your hand," Pltf's Resp. 12, creates a factual dispute as to the required specific intent for the incident on February 1, 2019. Because Plaintiff's Bane Act claim is otherwise predicated on the same facts as his excessive force claims, Defendant Vangerwen is not entitled to summary judgment on Plaintiff's Bane Act claim for that incident. Similarly, Defendant Page's alleged threat not to submit further grievances or ADA forms "or else," SUMF 35, is sufficient to defeat summary judgment on Plaintiff's Bane Act claim regarding the incident on February 22, 2019. However, for the same reasons set out above regarding Plaintiff's Count Three, summary judgment should be granted to Defendants Vangerwen, Dorstad, Schritter, Hurte, Jurkiewicz, and Mason on Plaintiff's Bane Act claim premised on that February 22, 2019, incident.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment (ECF No. 52) be GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED in favor of Defendants Vangerwen and Mason on Plaintiff's Fourteenth Amendment Inadequate Medical Care Claim (Count Two);

2. GRANTED in favor of Defendants Vangerwen, Dorstad, Schritter, Hurte, Jurkievicz, and Mason and Plaintiff's Fourteenth Amendment Excessive Force Claim (Count Three);

3. GRANTED in favor of Defendants Dorstad, Schritter, Hurte, Jurkiewicz, Mason, and Vangerwen on Plaintiff's First Amendment Retaliation claim (Count Four);

4. GRANTED in favor of Defendants Dorstad, Schritter, Hurte, Jurkiewicz, Mason, and Vangerwen on Plaintiff's Bane Act Claim for the incident on February 22, 2019 (Count Seven);

5. DENIED as to Plaintiff's Fourteenth Amendment Excessive Force claim against Defendant Vangerwen (Count One);

6. DENIED as to Plaintiff's Fourteenth Amendment Excessive Force claim against Defendant Page (Count Three); and

7. DENIED as to Plaintiff's Bane Act Claim against Defendant Vergerwen for the incident on February 1, 2019, and against Defendant Page for the incident on February 22, 2019 (Count Seven).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 8, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE